[No. D038521. Fourth Dist., Div. One. Jan. 7, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY LINWOOD, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

**COUNSEL**

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry J. T. Carlton and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McCONNELL, J.**—A jury convicted Jerry Linwood of rape of an intoxicated person, and two counts of attempted rape of an intoxicated person

(Pen. Code,[2] §§ 261, subd. (a)(3), 664).[3] In a subsequent proceeding, the trial court found Linwood had two prior serious felony convictions (§ 667, subd. (a)), and two prior serious/violent felony convictions or strikes (§§ 667, subds. (b)-(i), 1170.12). The trial court sentenced Linwood to an indeterminate term of 25 years to life under the three strikes law for the rape of an intoxicated person conviction and a concurrent term of 25 years to life for the attempted rape of an intoxicated person conviction. The sentence on the second attempted rape of an intoxicated person conviction was stayed pursuant to section 654. The court also imposed two 5-year terms pursuant to section 667, subdivision (a)(1).

We reject Linwood's contention the crime of rape of an intoxicated person (§ 261, subd. (a)(3)) violates constitutional principles of due process. We are also unpersuaded by Linwood's argument the judgment must be reversed because the jury was improperly instructed regarding the requisite mental state, the trial court made improper comments to the jury following closing arguments, and it was error to give CALJIC No. 17.41.1. We affirm the judgment.

## FACTS

On the morning of August 6, 2000, Jimmy D. Mickens, Jr., was leaving the Rescue Mission in downtown San Diego when he saw Linwood and his girlfriend, Tricia B., across the street lying on the curb. Mickens joined the pair and drank beer with them for about 30 minutes. Then the trio walked to 13th Street and Broadway to a free food location, but it was closed that day. Mickens noticed Tricia was getting sick so he went to a store and bought her some candy. According to Mickens, Linwood and Tricia were drinking "a lot" of hard liquor, and Tricia was "pretty tipsy." At one point, Tricia urinated in the street and was given a citation by a police officer. At another point, Tricia put her head in Linwood's lap while they sat on the curb; Tricia seemed comfortable with Linwood.

The three of them walked toward the San Diego City College campus, stopping at 17th and C Streets in the corner area of the college parking lot. Mickens sat down on the curb and ate candy. Linwood and Tricia went into

---

[2] All statutory references are to the Penal Code unless otherwise specified.

[3] One of the guilty verdicts for attempted rape of an intoxicated person was returned as a lesser included offense of the charged crime of assault with intent to commit rape (§ 220), for which Linwood was acquitted. The jury also acquitted Linwood of forcible rape (§ 261, subd. (a)(2)), attempted forcible rape (§§ 261, subd. (a)(2), 664), and attempted rape of an unconscious person (§§ 261, subd. (a)(4), 664).

some nearby bushes; Mickens later told a police officer the couple were holding hands as they walked into the bushes. As he was reading an article, Mickens heard a popping sound and looked up. Mickens saw Linwood raising his fist as if he were hitting Tricia. When Mickens went to see what was happening behind the bushes, Linwood was getting up and putting his shirt on. Linwood, who was not wearing pants, told Mickens that he (Mickens) could get what he wanted from Tricia. Tricia was bleeding from her head. When Mickens cradled her head, Tricia told him: "He beat me, he beat me and raped me." Meanwhile, Linwood, who was sitting about 18 feet away, was drinking.

Mickens went to a pay telephone and called 911. Officer Michael Baier met Mickens at the telephone and they drove to the scene. Baier saw Linwood, who was naked from the waist down, kneeling over Tricia and trying to spread her legs apart. Tricia, who was completely naked, was on the ground in a fetal position; she was semiconscious. Police arrested Linwood. Tricia was taken to a hospital.

Tricia had multiple scratches, lacerations and bruising on her face and body. It was stipulated that the results of DNA testing showed it was very likely Linwood was the source of saliva on a swab taken from Tricia's breast and the source of semen on a swab taken from Tricia's external genitalia. It was also stipulated that Linwood was a possible contributor to the DNA in the sperm fraction from Tricia's vaginal swab. Mickens was excluded as a possible source of any of the DNA.

Tricia's blood-alcohol level about one hour after the incident was .53 percent. A hospital doctor testified Tricia had a history of chronic alcoholism and had frequently been admitted to the hospital with very high blood-alcohol levels. Her most recent admission had been three days before this incident when she was admitted for an injury she sustained from a fall. A CAT scan had shown advanced atrophy of the brain, which was consistent with alcoholism. Tricia also had a seizure disorder and clotting problems, which were also consistent with alcoholism.

A toxicologist testified that for a person to reach a blood-alcohol level of .53 percent, he or she would have to have a significant drinking history and be very tolerant of the effects of alcohol. At that level, a person would have a difficult time walking and would be confused and disoriented.

Linwood's blood-alcohol level was .11 percent approximately two hours after the incident. The toxicologist opined his blood-alcohol level at the time of the incident would have been between .16 and .20 percent.

DISCUSSION

## I. *Constitutionality of Statute*

Section 261, subdivision (a)(3) reads:

"(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] . . . [¶]

"(3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused."

Linwood contends section 261, subdivision (a)(3), violates due process principles because it (1) is impermissibly vague and therefore does not provide adequate notice for an individual to avoid liability under the statute, and (2) eliminates the mens rea requirement. The contention is without merit.

*Vagueness*

 The constitutional guarantees of due process of law (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7) require "a reasonable degree of certainty in legislation, especially in the criminal law . . . ." (*In re Newbern* (1960) 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116].) "[A] penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender v. Lawson* (1983) 461 U.S. 352, 357 [103 S.Ct. 1855, 1858, 75 L.Ed.2d 903].)

In *Connally v. General Const. Co.* (1926) 269 U.S. 385, 391 [46 S.Ct. 126, 127, 70 L.Ed. 322], the United States Supreme Court articulated the void for vagueness doctrine as follows: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

█ There is a presumption in favor of the constitutionality of statutes. As the Supreme Court noted in *Williams v. Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507], "The starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]"

█ A court must view a statute from the "standpoint of the reasonable person who might be subject to its terms" and uphold the statute if its meaning is reasonably ascertainable. (*People v. Deskin* (1992) 10 Cal.App.4th 1397, 1400 [13 Cal.Rptr.2d 391].) In determining whether a criminal statute is sufficiently clear to fulfill fair notice requirements, we consider the language of the statute, its legislative history and California decisions construing the statutory language. (*Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 246 [158 Cal.Rptr. 330, 599 P.2d 636].) The requisite certainty can often "be fleshed out from otherwise vague statutory language by reference to," among other things, "long established or commonly accepted usage." (*Sechrist v. Municipal Court* (1976) 64 Cal.App.3d 737, 745 [134 Cal.Rptr. 733].)

█ Linwood unpersuasively contends section 261, subdivision (a)(3) is void for vagueness principally because of the disjunctive "reasonably should have been known" language. █ The concept of reasonableness in criminal statutes is not new. (*People v. Daniels* (1969) 71 Cal.2d 1119, 1128-1129 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) " 'There is no formula for the determination of reasonableness.' Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (*Id.* at p. 1129, quoting *Go-Bart Importing Co. v. United States* (1931) 282 U.S. 344, 357 [51 S.Ct. 153, 158, 75 L.Ed. 374].) "Reasonableness as the standard of an act, which can be determined objectively under the circumstances, is a constitutionally valid standard of law." (*People v. Deskin, supra,* 10 Cal.App.4th at p. 1402; see also *People v. Curtiss* (1931) 116 Cal.App.Supp. 771, 781.)

The use of such a standard does not make a statute uncertain; it requires either actual or constructive knowledge of the risk. (*Williams v. Garcetti, supra,* 5 Cal.4th at p. 574.) Imputed knowledge of the risk is tested on an objective basis: " '[I]f a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness.' " (*Ibid.*, quoting *People v. Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279].)

Courts have repeatedly upheld the "reasonable knowledge" standard against due process attacks. In *People v. Rodriguez* (1986) 42 Cal.3d 730, 780-782 [230 Cal.Rptr. 667, 726 P.2d 113], and *People v. Brown* (1988) 46 Cal.3d 432, 444-445 [250 Cal.Rptr. 604, 758 P.2d 1135], our Supreme Court upheld the constitutionality of section 190.2, subdivision (a)(7), which provides for a possible death penalty if the victim was a peace officer engaged in the performance of his or her duties when killed and the killer knew "*or reasonably should have known*" the victim was such an officer. (Italics added.) In *People v. Smith* (1993) 13 Cal.App.4th 1182, 1186-1190 [16 Cal.Rptr.2d 820], the Court of Appeal rejected a vagueness attack on the "reasonably should be known" element of section 667.9, subdivision (b), which is a sentence enhancement for specified crimes where the victim is, among other things, 65 years or older. In *People v. Mathews* (1994) 25 Cal.App.4th 89, 97-98 [30 Cal.Rptr.2d 330], the Court of Appeal held the disjunctive "reasonably should know" language of former section 417, subdivision (b),[4] which made it a felony to exhibit a firearm in the presence of a peace officer engaged in the performance of his or her duties, did not violate principles of due process.

 Can a jury determine whether a defendant reasonably should have known that a person's level of intoxication was such as to prevent him or her from resisting an act of sexual intercourse? Yes. As our Supreme Court said in *People v. Rodriguez*, in countering the argument that "the reasonably should have known" language of the statute was too vague a standard: "This argument is troubling only if one believes the average juror is unable to ascertain and apply the meaning of 'reasonably should have known' in the instruction reiterating the statutory language. We doubt this is the case. . . . Moreover, the average juror has the ability to cull from everyday experience a standard by which to assess the ability of a defendant to know the status of his or her victim." (*People v. Rodriguez, supra*, 42 Cal.3d at p. 782, fn. omitted.) Similarly, we conclude jurors are able to resolve the factual issue of whether a defendant reasonably should have known that a given victim was too intoxicated to resist an act of sexual intercourse. (See *People v. Smith, supra*, 13 Cal.App.4th at p. 1188.)

 We are also unpersuaded by Linwood's contention the word "prevented" in the phrase "prevented from resisting" is impermissibly vague. (§ 261, subd. (a)(3).) Linwood faults the statute for not providing a guideline for verifying at what point a person is prevented from resisting. We disagree. "It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited." (*Smith v. Peterson* (1955) 131 Cal.App.2d 241, 246 [280 P.2d 522, 49 A.L.R.2d 1194].) "All that is required is that the

---

[4]See now section 417, subdivision (c).

statute be reasonably certain so that persons of common intelligence need not guess at its meaning." (*People v. Silver* (1991) 230 Cal.App.3d 389, 393-394 [281 Cal.Rptr. 354]; *Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 [92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222].) "The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." (*Smith v. Peterson, supra*, 131 Cal.App.2d at p. 246.) "So long as the language embodies an objective concept, it is constitutionally concrete. [Citation.]" (*People v. Speegle* (1997) 53 Cal.App.4th 1405, 1411 [62 Cal.Rptr.2d 384].) The phrase "prevented from resisting" is composed of words with a commonly accepted meaning: both individually and collectively these words are understandable by persons of ordinary intelligence.

Linwood's reliance on *People v. Barksdale* (1972) 8 Cal.3d 320 [105 Cal.Rptr. 1, 503 P.2d 257] (*Barksdale*) is misplaced. In *Barksdale*, the Supreme Court considered the California Therapeutic Abortion Act and specifically the language concerning the criteria for approval of an abortion. The most commonly used ground of approval was "a finding that there 'is substantial risk that continuance of the pregnancy would gravely impair the physical or mental health of the mother.' [Citation.]" (*Id.* at pp. 327-328.) The high court found the statutory language unconstitutionally vague because it was unable to ascertain "either the nature of the diminished health required or that degree of diminution which stamps it as gravely impaired." (*Id.* at p. 330.)

To the extent Linwood suggests that *Barksdale, supra*, 8 Cal.3d 320, disapproved of the "substantial risk" language and therefore supports his position on the vagueness of the "reasonably should have been known" language of section 261, subdivision (a)(3), he is mistaken. The Supreme Court explicitly declined to determine whether " 'substantial risk' . . . suffers constitutional infirmities for vagueness." (*Barksdale, supra,* at p. 328, fn. omitted.) Thus, the discussion in footnote 3 regarding the potential vagueness of words such as " 'reasonable' or 'substantial' " (*id.* at p. 328, fn. 3) is dictum. ■ Dictum has no force as precedent. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

We reject Linwood's attempt to analogize the "prevented from resisting" language of section 261, subdivision (a)(3) to what he calls the "substantial risk" standard rejected in *Barksdale, supra*, 8 Cal.3d 320. First, as we have indicated above, the high court did not find the term "substantial" nor the phrase "substantial risk" impermissibly vague. Rather, the court found the phrase "gravely impair" was vague and the use of the phrase "mental health" was ambiguous because of other statutory language. (*Id.* at pp. 328-330.)

Second, the high court was dealing with language establishing the medical criteria for approval of abortions in a new statutory scheme, which is vastly different from whether one individual can recognize if another individual is so intoxicated that he or she cannot resist. There are commonly recognizable indications of a person's intoxication, including an odor of alcohol, slurring of speech and unsteadiness, that enable one to reasonably determine if another no longer has the ability to resist. Section 261, subdivision (a)(3) is sufficiently certain to meet minimal standards of due process.

*Mens Rea Requirement*

 Section 20 requires that a criminal offense must include a conduct element (actus reus) and a mental element (mens rea) in union. There are two kinds of criminal intent: general intent and specific intent. In *People v. Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], the Supreme Court explained the difference between the two: "When a definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." "General criminal intent thus requires no further mental state beyond willing commission of the act proscribed by law." (*People v. Sargent* (1999) 19 Cal.4th 1206, 1215 [81 Cal.Rptr.2d 835, 970 P.2d 409].)

 Rape is a general intent crime (*People v. Burnham* (1986) 176 Cal.App.3d 1134, 1140 [222 Cal.Rptr. 630]; *People v. Dillon* (1926) 199 Cal. 1, 7 [248 P. 230]), and requires only the perpetrator's criminal intent to commit sexual intercourse without the partner's consent. (*People v. Burnham, supra,* at p. 1140; *Frank v. Superior Court* (1989) 48 Cal.3d 632, 642 [257 Cal.Rptr. 550, 770 P.2d 1119] (conc. opn. of Kaufman, J.).) The rape statute identifies seven circumstances that make sexual intercourse with someone other than a spouse nonconsensual and therefore criminal. (§ 261, subd. (a)(1)-(7).) Forcible rape occurs when the act of sexual intercourse is perpetrated against a person's will by force or immediate threats of force (§ 261, subd. (a)(2)); rape by fraud occurs when fraud is used to make the victim believe the perpetrator is his or her spouse (§ 261, subd. (a)(5)). There are two kinds of rape that occur when future threats are used to overcome the victim's will: threats of future kidnapping, false imprisonment, infliction of pain, serious bodily injury or death (§ 261, subd. (a)(6)); and threats to use public authority to incarcerate, arrest or deport (§ 261, subd

(a)(7)). Finally, rape occurs when the victim lacks capacity to consent because of a mental disorder or disability (§ 261, subd. (a)(1)), unconsciousness (§ 261, subd. (a)(4)), or a level of intoxication that prevents resistance (§ 261, subd. (a)(3)). In each of these latter three circumstances, the accused either must have known or reasonably should have known of the victim's particular condition that precluded consent.

Linwood asserts that section 261, subdivision (a)(3) eliminates the mens rea requirement by including in its reach one who "reasonably should have known" the victim's intoxication prevented resistance. The statute, however, does not eliminate the knowledge requirement; rather, it sets a standard of knowledge or constructive knowledge.

## II. *Claim of Instructional Error*

Linwood contends his convictions must be reversed because CALJIC No. 10.02 includes the "reasonably should have been known" language and thus impermissibly allowed the jury to convict him on the basis of civil negligence without a finding of criminal culpability.[5] The contention is without merit.

First, CALJIC No. 10.02 tracks the language of the statute. Second, Linwood is mistaken in arguing the instruction allowed him to be convicted on the basis of civil negligence principles. As indicated in the previous section, rape of an intoxicated person is a general intent crime. The jury was instructed that Linwood was required to commit an intentional act (see CALJIC No. 3.30); in other words, mere negligence would not suffice.

In addition, section 261, subdivision (a)(3) uses a criminal negligence standard rather than a civil negligence standard on the accused's knowledge of the victim's disabling intoxication. "Under the criminal negligence standard, knowledge of the risk is determined by an objective test: '[I]f a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness.'" (*Williams v. Garcetti, supra,* 5 Cal.4th at p. 574.)

We realize that the " 'reasonably should have known' formulation departs somewhat from the usual description of criminal negligence." (*In re Jorge*

---

[5]Linwood objects to the following portion of the instruction as read to the jury: "Every person who engages in an act of sexual intercourse with another person not the spouse of the perpetrator, when that other person is prevented from resisting by any intoxicating substance, and this condition was known *or reasonably should have been known* by the accused, is guilty of the crime of rape in violation of Penal Code section 261[, subdivision] (a)(3)." (CALJIC No. 10.02, italics added.)

*M.* (2000) 23 Cal.4th 866, 887, fn. 11 [98 Cal.Rptr.2d 466, 4 P.3d 297].)[6] But at issue is the defendant's awareness of the state of the victim's intoxication and it is appropriate that an objective standard be applied. "Criminal negligence . . . is a standard for determining when an act may be punished under the penal law because it is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances." (*People v. Valdez* (2002) 27 Cal.4th 778, 789-790 [118 Cal.Rptr.2d 3, 42 P.3d 511].)

### III. *Trial Court's Comments*

During its jury instruction conference with the attorneys, the court indicated to the prosecutor that it was confused as to which evidence supported the individual charged counts. At the end of a lengthy discussion, the court told the prosecutor: "Okay. This needs to be clear to the jury so we're very clear on what they are considering, because certainly I got mixed up."

At the conclusion of the attorneys' closing arguments and immediately before instructing the jury, the court made the following comment to the jury:

"One thing I want to make clear is I think it's clear from the way counsel [the prosecutor] addressed the counts, in Count 1 and 2 that's forcible rape and rape of intoxicated person. This refers to People's theory of one incident before the evidence refers to a popping sound. Okay. It refers to allegation of rape by force and rape of intoxicated persons, which is just simply two different allegations on the same incident.

"So your job is to decide was there a rape. If so, was it forcible rape. Was it also a rape of intoxicated person. Not separate incidents. They are not alleging two rapes. They are alleging one rape. And then just two different code sections that apply to it is what the theory is from the People. And that also applies to the three counts of attempt which refers to the later incident in the testimony when the police drive up. According to the evidence, the People allege that that constitutes three different types of attempt. And you decide whether one or all of them apply. Okay? All right."

---

[6]A frequently used description of criminal negligence is found in *People v. Peabody* (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780]: "[Criminal negligence] must go beyond [ordinary negligence] required for civil liability and must amount to a 'gross' or 'culpable' departure from the required standard of care. [Citations.] [It] must be aggravated or reckless; that is, it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. [It] must show an indifference to the consequences, and this has been said to require knowledge, actual or imputed, that the act tends to endanger another's life."

Outside the presence of the jury, defense counsel moved for a mistrial, arguing the jury could construe the court's comments as assisting the prosecution and indicating the court's belief in the validity of the prosecution's case. The court denied the motion, stating in part:

"I think it was absolutely necessary to let the jury know which acts were applicable to which counts because as we said earlier, I was even confused as to where he was going as far as what portion of the evidence was to apply to each count. So we had to do that.

"And, frankly, at the end of the arguments I wasn't still convinced which portion of the testimony applied to which counts. And we haven't specified it in the jury verdicts either. So that's why I felt it was important.

"And I also wanted to rather than say—make it appear the Court was telling them which portions apply, I wanted to tell them that it was the People's theory that certain things applied so they didn't think it was coming from me telling them that this is what applies to this count."

 Linwood contends his convictions must be reversed because the court's comments to the jury unfairly emphasized the prosecution's case, and the assistance thus provided to the prosecution implied the court believed in the prosecution's case.

 Article VI, section 10 of the California Constitution provides that a court "may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." "The purpose of this provision is to allow the court 'to utilize its experience and training in analyzing evidence to assist the jury in reaching a just verdict. [Citations.]' [Citation.]" (*People v. Proctor* (1992) 4 Cal.4th 499, 542 [15 Cal.Rptr.2d 340, 842 P.2d 1100].)

A trial court has "broad latitude in fair commentary, so long as it does not effectively control the verdict." (*People v. Rodriguez, supra,* 42 Cal.3d at p. 768.) A trial court's " 'comment[s] on the evidence must be accurate, temperate, nonargumentative, and scrupulously fair. The trial court may not, in the guise of privileged comment, withdraw material evidence from the jury's consideration, distort the record, expressly or impliedly direct a verdict, or otherwise usurp the jury's ultimate factfinding power. [Citations.]' [Citations.]" (*People v. Proctor, supra,* 4 Cal.4th at p. 542.) "The propriety and prejudicial effect of a particular comment are judged both by its content and by the circumstances in which it was made." (*People v. Melton* (1988) 44 Cal.3d 713, 735 [244 Cal.Rptr. 867, 750 P.2d 741].)

 We find the trial court's comments were proper. "[T]he court did not comment, in any manner, upon the guilt of the accused, but merely discussed and analyzed the evidence in an impartial and instructive manner." (*People v. Foster* (1971) 19 Cal.App.3d 649, 657 [97 Cal.Rptr. 94].) The court sought to clear up possible jury confusion, which is a judicial function. (See § 1044.) The possibility of jury confusion was real since the court itself required a clarification of the prosecution's theory with respect to which incidents referred to which charges. The court's comments were temperate; they did not exceed the bounds of fair and impartial judicial comment and did not invade the province of the jury. Moreover, the jury was instructed pursuant to CALJIC No. 17.30 that the court had not intended by anything it had said or done to suggest what the jury should find as the facts and that the court's comments were not binding. The trial court did not overstep the bounds of its constitutional privilege to comment on the evidence.

## IV. *CALJIC No. 17.41.1**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 26, 2003.

---

*See footnote 1, *ante*, page 59.