189 Cal.App.4th 1263 (2010)
117 Cal. Rptr. 3d 535
THE PEOPLE, Plaintiff and Respondent,
v.
LARRY STEVEN SMITH, Defendant and Appellant.
No. C061805.
Court of Appeals of California, Third District.
November 8, 2010.
*1267 Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
ROBIE, J.
A jury found defendant Larry Steven Smith guilty of rape of an intoxicated woman (count I), rape of an unconscious woman (count II), and misdemeanor sexual battery. The trial court sentenced defendant to prison for eight years.
On appeal, defendant contends (1) the trial court gave misleading and incomplete instructions on rape of an intoxicated woman that require reversal of both rape convictions; and (2) because there is no crime of sexual battery of an intoxicated or unconscious woman, his conviction for sexual battery must be reversed. We shall affirm the judgment.

FACTS
During the afternoon of November 11, 2008, the victim, a 40-year-old woman, went shopping in the town of Jackson. Prior to noon she had taken medication for polymyositis, a disease which causes her immune system to attack her muscles, and included one milligram of Ativan, 10 milligrams of hydrocodone, 325 milligrams of acetaminophen, and 60 milligrams of Cymbalta.
Between 3:00 and 4:00 p.m., the victim went into a bar, the Fargo, and ordered a drink that contained one-half-ounce shots of vodka, rum, gin, and tequila. She ordered two more of the same, but drank only about one-half to one-third of the last drink.
While the victim was seated at the bar, customers Bon Grosse and defendant sat on each side of her and the three conversed. While on her third *1268 drink, the victim went into the bathroom, stayed for several minutes, and when she returned she had wet her pants, she was "totally, like, out of it" and incoherent. She put her head on the bar, the bartender removed her drink, and she turned her head and vomited on the floor. The bartender called and obtained a room for the victim at the National Hotel, which was across the street.
Grosse and defendant took the victim to the hotel, physically supporting her because she was unable to walk by herself. While the victim sat on a barstool in the hotel's bar, Rebecca Hunderfund, the hotel's desk clerk and bartender, checked the victim into room 38. Hunderfund described the victim as "[v]ery, very out of it[,] [v]ery, very intoxicated," she was unable to walk by herself, and she had to be held to keep from falling off of the barstool.
Hunderfund gave Grosse the only key to room 38 and Grosse and defendant took the victim to the room. Grosse and defendant put the victim on the bed. Grosse placed the key on the sink and the two left, with Grosse closing the room's door.
The hotel's security videotape, which was played for the jury, showed that as Grosse and defendant were walking the victim down the hall, her brassiere was dangling in front of her blouse and defendant had his hand under her blouse and on her breast.
Grosse and defendant returned to the Fargo, but about 20 to 30 minutes later Grosse went to check on the victim because he could not recall whether the door to her room was locked. The door was locked and Grosse did not enter the room. Grosse told Hunderfund that the victim was "out for the night," had a quick drink, and then returned to the Fargo.
About 45 minutes to an hour after Grosse had left the National Hotel, defendant returned to the hotel, telling Hunderfund that he was going to check on the victim.
The hotel's videotape shows defendant entering the hotel at 8:32 p.m. and then walking toward the victim's room carrying a bag, switching hands with it and reaching into his pocket before going into the victim's room. Defendant is shown leaving the hotel at 7:55 a.m. the next morning.
The victim testified that she recalled ordering the second drink at the Fargo and vaguely remembered speaking with Bon Grosse and defendant while they *1269 sat next to her. However, she did not recall anything thereafter until she awakened in the hotel room, lying on a bed without her pants and underwear, and with defendant lying naked next to her. At 10:15 p.m., scared, she got dressed and drove home. The next morning when she went to the bathroom, she discovered that her tampon was shoved up inside her. She now thought she had been raped.
Accompanied by her mother, the victim went back to the Fargo to find out what had happened. At the Fargo, the victim confronted defendant and asked him what had happened. Defendant told her that she had gone into the bathroom, peed on herself, vomited, and that he and Grosse had taken her to the National Hotel. She said to defendant, "So what gave you the right to have sex with me?" He replied, "Oh, you initiated it" and she began to cry.
The victim went to a hospital to be examined and said she had been raped. The police were then called by the hospital staff.

DISCUSSION

I

Rape of an Intoxicated Woman
Relying on People v. Giardino (2000) 82 Cal.App.4th 454 [98 Cal.Rptr.2d 315], defendant contends the trial court's instructions to the jury on rape of an intoxicated woman were prejudicially incomplete and misleading because they fail to "adequately distinguish[] between [the victim's] exercising `poor judgment' and the complete inability to exercise `reasonable judgment.'" Not so.
Penal Code[1] section 261 provides in part: "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] ... [¶] (3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." (Italics added.)
In Giardino, the defendant was charged with a violation of section 261, subdivision (a)(3) and the court instructed the jury in substantially the same *1270 language set forth in the statute. (People v. Giardino, supra, 82 Cal.App.4th at pp. 465-466.) During deliberations, the jury requested a legal definition of "resistance." (Id. at p. 464.) The court responded by instructing the jury to" `use your common sense and experience to determine the everyday meaning of resistance.'" (Ibid.)
On appeal, Giardino held the trial court erred by failing to define the phrase "prevented from resisting" and should have instructed the jury that "its task was to determine whether, as a result of her level of intoxication, the victim lacked the legal capacity to give `consent' ... [which] is the ability to exercise reasonable judgment, i.e., to understand and weigh not only the physical nature of the act, but also its moral character and probable consequences." (People v. Giardino, supra, 82 Cal.App.4th at pp. 465-466.)
(1) Giardino went on to note, "In deciding whether the level of the victim's intoxication deprived the victim of legal capacity, the jury shall consider all the circumstances, including the victim's age and maturity. [Citation.] It is not enough that the victim was intoxicated to some degree, or that the intoxication reduced the victim's sexual inhibitions. `Impaired mentality may exist and yet the individual may be able to exercise reasonable judgment with respect to the particular matter presented to his or her mind.' [Citations.] Instead, the level of intoxication and the resulting mental impairment must have been so great that the victim could no longer exercise reasonable judgment concerning that issue." (People v. Giardino, supra, 82 Cal.App.4th at pp. 466-467.)
Here, the court instructed the jury with CALCRIM No. 1002 as follows: "To prove that the defendant is guilty of [rape of an intoxicated woman], the People must prove that: [¶] 1. The defendant had sexual intercourse with a woman; [¶] 2. He and the woman were not married to each other at the time of the intercourse; [¶] 3. The effect of an intoxicating substance prevented the woman from resisting; [¶] AND [¶] 4. The defendant knew or reasonably should have known that the effect of an intoxicating substance prevented the woman from resisting."
The instruction further stated: "A person is prevented from resisting if she is so intoxicated that she cannot give legal consent. In order to give legal consent, a person must be able to exercise reasonable judgment. In other words, the person must be able to understand and weigh the physical nature of the act, its moral character, and probable consequences. Legal consent is consent given freely and voluntarily by someone who knows the nature of the act involved."
*1271 In defendant's view, CALCRIM No. 1002 is incomplete and misleading because it "provides little or no real measure for the degree of intoxication requisite for the crime," and it fails to "adequately distinguish[] between exercising `poor judgment' and the complete inability to exercise `reasonable judgment.'" "Thus," defendant concludes, "conviction is possible when the alleged victim merely understands and weighs badly the circumstances in which she is acting." This is not a reasonable reading of the instruction.
(2) First, CALCRIM No. 1002 does provide a "real measure" of the degree of intoxication required for the crime of rape of an intoxicated woman; namely, the woman must be "so intoxicated that she cannot give legal consent." Second, while it may well be that in common parlance "reasonable judgment" and "poor judgment" are mutually exclusive concepts, this is not so with CALCRIM No. 1002 because it specifically provides the legal definition of "reasonable judgment" as that phrase is used in the crime of rape of an intoxicated woman. Specifically, the woman must be "able to understand and weigh the physical nature of the act, its moral character, and probable consequences." In other words, even a poor judgment is a reasonable judgment so long as the woman is "able to understand and weigh the physical nature of the act, its moral character, and probable consequences."
Defendant also argues that CALCRIM No. 1002 "does not make it clear that the incapacity to exercise `reasonable judgment' must be in relation to sexual relations and sexual intercourse." This argument is frivolous since the entire content of CALCRIM No. 1002 instructs the jury on what they must consider in determining whether the charge of rape, which obviously cannot occur without sexual intercourse, had been proven.
(3) CALCRIM No. 1002 correctly incorporates the law of rape of an intoxicated woman as set forth in People v. Giardino, supra, 82 Cal.App.4th at page 454. There was no error.

II

Rape of an Unconscious Woman
Defendant next contends that his conviction for rape of an unconscious woman must be reversed because there "is a reasonable likelihood" that the *1272 jury used the definition provided in CALCRIM No. 1002 (rape of intoxicated woman) of when a woman is "prevented from resisting" rather than the definition of when a "woman is unconscious of the nature of the act" as provided by CALCRIM No. 1003 (rape of an unconscious woman).[2]
That the jury so understood the instruction, defendant continues, is established by the following: The victim was able to assist in registering at the hotel at 5:45 p.m. She was "clearly conscious" at 10:15 p.m. when she checked out. Thus, between 8:30 p.m., when defendant returned to the hotel, and 10:15 p.m. there was "some middle ground of waxing consciousness" which made it "almost inconceivable" that "intercourse impeded by a tampon, completely escaped the perception or awareness of [the victim]."
Defendant then concludes that because the jury used the CALCRIM No. 1002 definition of "prevented from resisting," a definition which he has shown to be error, his conviction in count II must be reversed.
Defendant is wrong for several reasons. First, as discussed above, CALCRIM No. 1002's definition of "prevented from resisting" is not erroneous.
(4) Second, "[j]urors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (People v. Sanchez (2001) 26 Cal.4th 834, 852 [111 Cal.Rptr.2d 129, 29 P.3d 209].) (5) CALCRIM No. 1003, as read to the jury, defines when a woman is unconscious within the meaning of rape of an unconscious woman: "A woman is unconscious of the nature of the act if she is unconscious or asleep or not aware that the act is occurring."
The victim testified that she did not know that defendant had intercourse with her, but awakened and found him lying naked next to her. She gathered *1273 up her clothing and immediately left the hotel. It was not until she got home and discovered that her tampon had been pushed deep into her that she suspected she had been subjected to intercourse. The jury clearly believed, as they were entitled to do, her testimony rather than that of defendant. That the victim was conscious at 10:15 p.m. does not compel the conclusion that she was not asleep at some time near 8:30 p.m. when defendant sexually penetrated her or, if conscious, that she was not still intoxicated to the point where she was unable to understand the nature of the sexual act.

III

Sexual Battery
Based on the undisputed evidence that defendant had his hand on the victim's breast when he was aiding Grosse in taking her to her room at the National Hotel, the jury found him guilty of misdemeanor sexual battery in violation of section 243.4, subdivision (e)(1). That statute provides that "[a]ny person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery . . . ."
Defendant acknowledges generally that contact with a person is "against the will of the person" if the person touched does not consent to the contact, and he admits that lack of consent may exist where a person is incapable of giving consent. He further contends, however, that where lack of consent is due to such incapacity, "the Legislature invariably provides for a differently defined crime that renders the existence of the victim's will vel non irrelevant." In other words, he contends that when the Legislature intends to criminalize sexual behavior with a victim who is incapable of consenting to that behavior, the Legislature does not describe the behavior in terms of being "against the will of the person," but uses different terminology.
In support of this line of reasoning, defendant contends that for the crime of rape, the Legislature separately criminalized sexual intercourse "accomplished against a person's will" (§ 261, subd. (a)(2)), sexual intercourse with an intoxicated person (id., subd. (a)(3)), and sexual intercourse with an unconscious person (id., subd. (a)(4)). In his view, sexual battery as charged hereunder subdivision (e)(1) of section 243.4is comparable to the type of rape criminalized in subdivision (a)(2) of section 261, but there is no analogue in the crime of sexual battery for rape of an intoxicated or *1274 unconscious person. He contends that because "there is no such crime as sexual battery on a person prevented from resisting due to intoxication or at least general unconsciousness," the evidence is insufficient to sustain his conviction for sexual battery here.
We reject defendant's argument because his comparison of the rape statute (§ 261) and the sexual battery statute (§ 243.4) is faulty. When the statutes are properly compared, section 261 does not, as defendant contends, distinguish rape of an intoxicated or unconscious person from rape "accomplished against a person's will" in a manner that suggests the Legislature did not intend to criminalize sexual battery on an unconscious person or a person too intoxicated to consent.
(6) Generally speaking, rapeas defined in section 261is "sexual intercourse without the partner's consent," and "[t]he rape statute identifies seven circumstances that make sexual intercourse with someone other than a spouse nonconsensual and therefore criminal." (People v. Linwood (2003) 105 Cal.App.4th 59, 70 [129 Cal.Rptr.2d 73].) Subdivision (a)(2) of section 261 criminalizes as rape sexual intercourse "[w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." In other words, that subdivision criminalizes forcible rape. Subdivision (a)(3) of section 261 criminalizes sexual intercourse "[w]here a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." Subdivision (a)(4) of section 261 criminalizes sexual intercourse "[w]here a person is at the time unconscious of the nature of the act, and this is known to the accused." A person is "unconscious of the nature of the act" when the person is "incapable of resisting" due to various circumstances, including (but not limited to) being "unconscious or asleep." (§ 261, subd. (a)(4)(A).) The rape statute also describes several other circumstances in which sexual intercourse accomplished with a person without that person's consent constitutes rape, including two other provisions that use the phrase "against the victim's will." (§ 261, subd. (a)(6) [rape under threat of future retaliation] & (7) [rape by threat of the use of public authority].)
(7) Just as section 261 criminalizes nonconsensual sexual intercourse, section 243.4 criminalizes nonconsensual sexual touching. Specifically, section 243.4 identifies five circumstances that make sexual touching nonconsensual and therefore criminal. Subdivision (a) of the statute criminalizes as a felony or misdemeanor (a "wobbler") sexual touching when the person touched "is unlawfully restrained by the accused or an accomplice." *1275 Subdivision (b) of the statute criminalizes as a wobbler sexual touching when the person touched "is institutionalized for medical treatment and . . . is seriously disabled or medically incapacitated." Subdivision (c) of the statute criminalizes as a wobbler sexual touching when the person touched "is at the time unconscious of the nature of the act because the perpetrator fraudulently represented that the touching served a professional purpose." Subdivision (d) of the statute criminalizes as a wobbler sexual touching under circumstances like those described in subdivisions (a) and (b) of the statute but when the perpetrator causes the victim to do the touching. And finally, subdivision (e)(1) of the statuteacting as a "catchall" provisioncriminalizes as a misdemeanor only sexual touching when "the touching is against the will of the person touched."
(8) It is true that in criminalizing as rape sexual intercourse with an intoxicated person, the Legislature specifically defined the crime in terms of the victim being "prevented from resisting by any intoxicating or anesthetic substance." (§ 261, subd. (a)(3).) It is also true that in criminalizing as rape sexual intercourse with an unconscious person, the Legislature specifically defined the crime in terms of the victim being "incapable of resisting" due to being "unconscious or asleep." (§ 261, subd. (a)(4)(A).) It does not follow, however, that just because the Legislature did not use similar language in defining the crime of sexual battery, the Legislature must not have intended to criminalize sexual touching of a person who is too intoxicated to consent to the touching or who is unconscious.
As defendant himself admits, the phrase "against the will of the person touched" connotes lack of consent. Because a person who is unconscious or too intoxicated to give consent cannot consent to a sexual touching, the touching of such a person is necessarily "against the will of th[at] person." That the Legislature, for whatever reason, chose to use phrases like "prevented from resisting" and being "incapable of resisting" in criminalizing nonconsensual sexual intercourse with an unconscious person or a person too intoxicated to consent does not mean we should ascribe to the phrase "against the will" anything other than its usual meaning in ascertaining whether the Legislature intended to also criminalize the nonconsensual sexual touching of an unconscious person or a person too intoxicated to consent. If we accepted defendant's invitation to disregard the usual meaning of that term, it would lead to absurd results. For instance, a sexual touching accomplished without the consent of the victim through the use of force would constitute the crime of sexual battery, but the same touching accomplished without the consent of the victim because the victim was unconscious or was too intoxicated to consent would be no crime at all. We do not believe that in drafting section *1276 243.4, the Legislature intended to authorize the free-for-all sexual groping of any personlike the victim in this casewho is unable to resist because of unconsciousness or intoxication. Accordingly, we reject defendant's construction of the sexual battery statute.
To the extent defendant relies on the majority opinion in People v. Babaali (2009) 171 Cal.App.4th 982 [90 Cal.Rptr.3d 278] to support his argument, we are still not persuaded. In that opinion, two members of Division Four of the Second Appellate District concluded that "lack of consent is not an element of sexual battery by fraudulent representation"the crime described in subdivision (c) of section 243.4. (Babaali, at p. 997.) In their view, "a defendant violates section 243.4, subdivision (c) by making a fraudulent representation that results in the victim's submitting to a specific intimate touching, not by committing an intimate touching against the victim's will." (Babaali, at p. 998.)
(9) In defendant's view, the reasoning of the majority in Babaali supports the conclusion that misdemeanor sexual battery as defined in subdivision (e) of section 243.4 does not encompass a nonconsensual sexual touching where the "absence of consent [is] due to incapacity." We do not agree with the Babaali majority's interpretation of section 243.4, however. Instead, we agree with the dissenting justice that because "[s]exual battery by fraudulent representation requires the victim to be `unconscious of the nature of the act' due to the perpetrator's misrepresentation," and "[b]ecause consent requires that the victim know the nature of the act," "where the victim is unconscious of the nature of the act, she cannot consent." (People v. Babaali, supra, 171 Cal.App.4th at p. 1001 (dis. opn. of Manella, J.).) In other words, a victim who is unconscious that she is being subjected to a sexual touchingthat is, a touching "for the specific purpose of sexual arousal, sexual gratification, or sexual abuse"because "the perpetrator fraudulently represented that the touching served a professional purpose," has not consented to that sexual touching, and that touching is against the will of the victim just as much as if the victim were incapable of consenting or if the perpetrator were to accomplish the touching by force.
Because we do not agree with the majority opinion in Babaali on which defendant relies, we find his reliance misplaced. Thus, we conclude there was sufficient evidence to support defendant's conviction of misdemeanor sexual battery.[3]

*1277 DISPOSITION
The judgment is affirmed.
Scotland, Acting P. J.,[*] and Butz, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code.
[2] Specifically, defendant's argument is the following: "The instructional language [(referring to CALCRIM No. 1003)] brings forth the parallelism with the crime of rape of an intoxicated woman. In both cases, the key is that the woman in [sic] prevented from resisting: in one instance by intoxication, in the other by unconsciousness. In the instant case, the [sic] are conjoined by the facts, insofar as any unconsciousness on the part of [the victim] was due to intoxication. Thus, there is a reasonable likelihood that the juror would assimilate the `awareness' of whether or not the act is occurring to an awareness of its physical nature and other circumstances. In other words, the jury would assimilate this requirement to the erroneous instruction [(referring to CALCRIM No. 1002)], thereby lightening the prosecution's burden of proof to show that [the victim] was not merely relatively unconscious of what she was doing, but rather completely insensate."
[3] Since defendant has been convicted of two counts of rape, each of which is serious (§ 1192.7, subd. (c)(3)), he is not entitled to the additional conduct credits provided by the recent amendments to sections 2933 and 4019.
[*] Retired Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.