Filed 9/11/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B269153 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA436890) |
| v. | |
| ANDRES LUJANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Norman J. Shapiro, Judge. Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

A jury convicted Andres Lujano of sodomy of an intoxicated person (Pen. Code, § 286, subd. (i)),[1] and the trial court sentenced him to six years in state prison.  He appeals, claiming the trial court prejudicially erred by refusing to instruct the jury that an actual and reasonable belief that the victim was capable of consenting is a defense.

We conclude that the court did not err, because the requested instruction merely duplicated other instructions that were properly given.  For similar reasons, any error was harmless because the factual question posed by the requested instruction was necessarily resolved against Lujano under the other instructions.  We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lujano was charged with sodomy of an unconscious victim (§ 286, subd. (f); count 1) and sodomy of an intoxicated person (§ 286, subd. (i); count 2).

The victim, Marco M., testified Lujano had lived next door to Marco's family for three years, and Marco trusted him.  Their families were close, and Lujano had come to the hospital when Marco's baby was born.  Marco had talked with Lujano about Marco's girlfriend and baby and considered Lujano to be his friend.  Lujano had told Marco (and Marco's mother) he "ha[d] a preference for men."  Marco "d[id]n't judge nobody."

---

[1] Unless specified otherwise, all further section references are to the Penal Code.

2

Marco testified that on May 26, 2015, he was sad because his baby was in the hospital with respiratory problems. Sitting in his truck in front of his house, he started drinking beer with his friend Jose at about 8:00 p.m. At around 11:00 p.m., he tried methamphetamine (provided by Jose) for the first time, and it made him feel more awake. Jose went home around midnight, but Marco did not go to sleep that night. Between 8:00 p.m. and about 5:30 a.m., in addition to the methamphetamine he ingested, Marco smoked marijuana and drank more than 20 beers. Marco testified he is five feet, five inches tall and weighs about 130 pounds.

At about 5:30 a.m. on May 27, Lujano approached Marco in the truck and asked him if he wanted another beer; Marco had socialized with and drunk beer with Lujano previously. Marco said he did want another beer, and Lujano told him to come get it from his house. Marco went inside Lujano's home to get the beer and sat down in the living room while Lujano was in the kitchen washing dishes. Marco was "pretty intoxicated" and dozed off sitting on Lujano's couch.

Marco testified he woke up because he felt "hard pain" "in [his] butt." When he opened his eyes, he saw Lujano's hands on top of his hands, he was face down over the side of the couch with his pants below his waist, and Lujano's body was on top of him. When Lujano saw that Marco had opened his eyes, Lujano immediately stopped, got up, and started putting on his clothes. Marco got up, said he had to leave, and tried to go through the front door, but the door required a key to unlock it from the inside. Lujano could not find his keys and told Marco to go through the window. He gave Marco $6 and told him not to tell

3

anyone.  Marco was "still hurting" and "wasn't able to walk right."

Immediately after climbing through Lujano's window, Marco went inside his own house and told his mother what had happened—that he "got raped."  She started crying and told him to call 911, which he did at 6:54 a.m.  While Marco was still on the witness stand, the prosecutor played the recording of the 911 call, in which Marco told the operator "my neighbor just raped me."  Crying throughout the call, Marco said he was drunk and "just woke up and he was on top of me."  Police officers arrived about five minutes later, spoke with Marco, and took him to the hospital.  Officers also took Lujano into custody that morning.

The officers who responded to Marco's 911 call testified Marco was crying, his eyes were red, bloodshot, and watery, he "had a strong odor of alcohol coming from him," and he "appear[ed] to be under the influence" when they arrived.  He said he "just got raped by his neighbor."  He told the officers he went into Lujano's house for a beer and fell asleep sitting on the couch, and Lujano was on top of him when he woke up.

The supervising nurse practitioner who performed Marco's sexual assault exam two to three hours after his 911 call testified Marco had an actively bleeding anal laceration—a "fairly significant injury."  She noted Marco was "shut down" and had difficulty talking about what had happened but told her he had had a lot of alcohol and was going to have a beer at Lujano's house but "passed out" on the couch; when he "awoke," Lujano was penetrating him.  She testified Marco's examination was consistent with his report.  The parties stipulated that sperm found on Marco's anal swab matched Lujano's DNA profile.

4

Lujano did not testify and called no witnesses. The parties stipulated to admission of two defense exhibits, which were toxicology reports indicating that both Lujano and Marco had ingested alcohol and methamphetamine.

The jury found Lujano guilty of sodomy of an intoxicated person (§ 286, subd. (i); count 2) and not guilty of sodomy of an unconscious person (§ 286, subd. (f); count 1). The trial court sentenced Lujano to the midterm of six years in state prison.

## DISCUSSION

A.    *Governing Legal Principles and Lujano's Contention*

"In criminal cases, a trial court must instruct sua sponte on the ""general principles of law relevant to the issues raised by the evidence,"" that is, those principles ""closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."" [Citation.] By contrast, "pinpoint" instructions 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case, such as mistaken identification or alibi. [Citation.] They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte.' [Citation.]" (*People v. Hill* (2015) 236 Cal.App.4th 1100, 1118-1119.) In addition, the court "'need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation].' [Citations.]" (*People v. Hartsch* (2010) 49 Cal.4th 472, 500; see also *People v. Williams* (2016) 1 Cal.5th 1166, 1193; *People v. Bolden* (2002) 29 Cal.4th 515, 558.)

5

Here, the trial court used CALCRIM No. 1032 to instruct the jury on the elements of sodomy of an intoxicated person. As given in this case, the instruction defined the three elements of the crime as follows: "1. The defendant committed an act of sodomy with another person; [¶] 2. The effect of an intoxicating and/or controlled substance prevented the other person from resisting; [¶] AND [¶] 3. The defendant knew or reasonably should have known that the effect of that substance prevented the other person from resisting." (See CALCRIM No. 1032.) The instruction went on to explain that "[a] person is prevented from resisting if he or she is so intoxicated that he or she cannot give legal consent. In order to give legal consent, a person must be able to exercise reasonable judgment. In other words, the person must be able to understand and weigh the physical nature of the act, its moral character, and probable consequences. Legal consent is consent given freely and voluntarily by someone who knows the nature of the act involved." (See *ibid.*)

Lujano requested that the court also give the jury the following optional language from CALCRIM No. 1032: "The defendant is not guilty of this crime if he actually and reasonably believed that the other person was capable of consenting to the act, even if that belief was wrong. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person was capable of consenting. If the People have not met this burden, you must find the defendant not guilty." (CALCRIM No. 1032.) The court denied the request on the ground that there was insufficient evidence to support it.

Lujano contends that the trial court erred by refusing to give the optional language he requested. We conclude that the

6

court did not err, because the optional language is a pinpoint instruction that merely duplicates other parts of the instruction given, namely, the third element and the definition of "prevented from resisting."  In addition, even if omission of the optional language was erroneous, it was not prejudicial.

B.    *CALCRIM No. 1032 Correctly Defines "Prevented From Resisting"*

Before addressing Lujano's claim of error, we must first address the instruction's definition of "prevented from resisting," because it is necessary to our analysis and there are no published cases on it.

The crime of sodomy of an intoxicated person is defined by section 286, subdivision (i), which provides that "[a]ny person who commits an act of sodomy, where the victim is prevented from resisting by an intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused, shall be punished by imprisonment in the state prison for three, six, or eight years."

The optional language requested by Lujano—that an actual and reasonable belief that the victim had the capacity to consent is a defense—relates to the statutory requirements that (1) the victim was prevented from resisting by the intoxicating (or other prohibited) substance, and (2) the perpetrator knew or reasonably should have known of that condition.  There is no case law interpreting either requirement for purposes of section 286, subdivision (i).

There are, however, cases interpreting section 261, subdivision (a)(3), which defines *rape* of an intoxicated person in

7

terms identical to those used to define *sodomy* of an intoxicated person in section 286, subdivision (i).  In particular, for the crime of rape of an intoxicated person, the statutory requirement that the victim was prevented from resisting by the intoxicating or anesthetic or controlled substance has been interpreted to mean that the victim was "not capable of giving legal consent because of intoxication." (*People v. Giardino* (2000) 82 Cal.App.4th 454, 462 (*Giardino*); see *People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1244-1245; *People v. Smith* (2010) 189 Cal.App.4th 1263, 1270-1271.)  *Giardino* based its analysis on California Supreme Court case law concerning rape of a mentally incompetent person, as well as Court of Appeal cases dealing with substantial evidence challenges to convictions for rape of an intoxicated person.  (*Giardino*, at pp. 461-464.)

We agree with and need not repeat the thorough analysis in *Giardino*, and we conclude that it applies equally to the identical language in section 286, subdivision (i).  Accordingly, we hold that for purposes of section 286, subdivision (i), the words "the victim is prevented from resisting by an intoxicating or anesthetic substance, or any controlled substance" mean that the victim is not capable of giving legal consent because of intoxication from the substance or substances in question. CALCRIM No. 1032 correctly explains that meaning.

C.    *The Optional Language Is a Pinpoint Instruction That Merely Duplicates Other Parts of the Instruction*

The optional language that Lujano requested restates the third element of the offense by (1) reformulating that element in the negative and (2) incorporating the definition of "prevented from resisting."  That is, instead of saying that the defendant can

8

be guilty only if he knew or reasonably should have known that the victim was prevented from resisting, the optional language says that the defendant is not guilty if he actually and reasonably believed that the victim was capable of consenting.

The optional language thus does no more than pinpoint a key component of the defendant's case by restating other parts of the instruction that are required. The court has no sua sponte duty to use the language that Lujano requested, even if it is supported by substantial evidence, because the issues addressed are fully covered by the instructions on the third element and the definition of "prevented from resisting." And even when the optional language is not only supported by substantial evidence but also requested by the defendant, the court may decline to give it because it "'merely duplicates other instructions.'" (*People v. Hartsch*, *supra*, 49 Cal.4th at p. 500; *People v. Williams*, *supra*, 1 Cal.5th at p. 1193; *People v. Bolden*, *supra*, 29 Cal.4th at p. 558.) The trial court therefore did not err by denying Lujano's request.

The parties' arguments on appeal generally miss these points because they incorrectly describe the optional language as an instruction on the "*Mayberry* defense," referring to *People v. Mayberry* (1975) 15 Cal.3d 143. In *Mayberry*, the Supreme Court explained that "there is no rape if a female of sufficient capacity consents to sexual intercourse." (*Id.* at p. 154.) In addition, because "one is incapable of committing a crime who commits an act under a mistake of fact disproving any criminal intent" (*ibid.*), the Supreme Court went on to hold "that a defendant's reasonable and good faith mistake of fact regarding a person's consent to sexual intercourse is a defense to rape." (*People v. Williams* (1992) 4 Cal.4th 354, 360; see *Mayberry*, at p. 155.) Thus, even if the victim did not in fact consent, if the defendant

9

actually and reasonably but mistakenly believed she consented, then the defendant is not guilty. (See generally *Williams*, at pp. 360-362.)

The *Mayberry* defense—that the defendant actually and reasonably but mistakenly believed that the victim consented—is a defense to a charge of forcible rape. (*Giardino, supra*, 82 Cal.App.4th at p. 471.) Moreover, because the victim's lack of consent is an element of that offense but the defendant's *belief* in the absence of consent is *not* an element, the *Mayberry* defense is an affirmative defense, not merely the negation of an element of the offense. (See *People v. Williams, supra*, 4 Cal.4th at p. 361 ["The defendant bears the burden of raising a reasonable doubt as to whether he harbored a reasonable and good faith but mistaken belief of consent," but "'only if the prosecution's proof did not itself raise such a doubt'"].) Accordingly, if the defense is supported by substantial evidence, then the court has a sua sponte duty to instruct on it. (See, e.g., *People v. Dominguez* (2006) 39 Cal.4th 1141, 1147-1148; *Williams*, at p. 362 [explaining that the duty to instruct on the defense arises if there is "substantial evidence of equivocal conduct that would have led a defendant to reasonably and in good faith believe consent existed where it did not"].)

The situation with sodomy (or rape) of an intoxicated person is entirely different. First, a charge of sodomy (or rape) of an intoxicated person is premised not on the victim's lack of *actual* consent but rather on the victim's lack of *capacity* to give *legal* consent. (See *Giardino, supra*, 82 Cal.App.4th at p. 471 ["Because . . . the actual consent of the victim is not a defense to a charge of rape by intoxication, a belief in the existence of such actual consent is irrelevant"].) Second, although it is *not* an

10

element of forcible rape that the defendant believed the victim did not consent, it *is* an element of sodomy (or rape) by intoxication that the defendant knew or reasonably should have known the victim was incapable of consenting. This difference in the elements of the crimes derives from their statutory definitions and is correctly reflected in their respective CALCRIM instructions. (See §§ 261, subds. (a)(2)-(a)(3), 262, subds. (a)(1)-(a)(2), 286, subd. (i); CALCRIM Nos. 1000, 1002, 1032.)

Thus, unlike the *Mayberry* defense, the defense at issue here—that the defendant actually and reasonably believed that the victim was capable of giving legal consent—is merely the negation of an element of the offense. The court thus does not have a sua sponte duty to give a separate instruction on the defense, because the issues are already covered by the required instructions on the third element of the offense and the definition of "prevented from resisting."[2] And, as we have already explained, the court has no duty to give the optional language concerning the defense even when requested.

For all of these reasons, we conclude that the trial court did not err by not giving the optional language requested by Lujano.

---

[2] The bench notes for CALCRIM Nos. 1002 and 1032 incorrectly state that "[t]he court has a **sua sponte** duty to instruct on the defense of reasonable belief the person was capable of consent if there is sufficient evidence to support the defense," citing *Giardino*. *Giardino* does not so hold. Rather, it recognized the existence of the defense. (*Giardino*, *supra*, 82 Cal.App.4th at p. 472.) It did not address the issue of whether there is a sua sponte duty to give a separate instruction on the defense.

D.    *Failure To Give the Optional Language Was Harmless*

Even if the trial court did err by failing to give the optional language, we still must affirm the judgment because the error was harmless under any standard.  (See *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705] [federal constitutional error is reversible unless it was harmless beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 837 [state law error is reversible if it is reasonably probable that the defendant would have obtained a more favorable result without the error].)

Omission of an instruction is harmless beyond a reasonable doubt if "'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.'"  (*People v. Wright* (2006) 40 Cal.4th 81, 98.)

Because the jury found Lujano guilty of sodomy of an intoxicated person, the jury necessarily found, under the instructions given, that Lujano knew or reasonably should have known that Marco was so intoxicated that he lacked the capacity to give legal consent.  Therefore, the jury "necessarily found any belief by defendant that the victim had capacity to consent was unreasonable."  (*People v. Braslaw, supra*, 233 Cal.App.4th at p. 1246 [addressing the same issue in a case of rape by intoxication]; *People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1529 ["A belief that the victim was able to resist could not be reasonable if the perpetrator 'reasonably should have known' that the victim was unable to resist"].)

Because the factual question posed by the omitted language on reasonable belief in the capacity to consent was necessarily resolved against Lujano under other, properly given parts of

12

CALCRIM No. 1032, the omission of the requested language was harmless under any standard. (*People v. Braslaw*, *supra*, 233 Cal.App.4th at pp. 1246-1247; *People v. Ramirez*, *supra*, 143 Cal.App.4th at p. 1529.)

## **DISPOSITION**

The judgment is affirmed.

MENETREZ, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.