Filed 1/7/21  P. v. Torres-Bustos CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072359 |
| v. | (Super.Ct.No. INF1701213) |
| RAFAEL TORRES-BUSTOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Randall D. White*, John J. Ryan** and Gregory J. Olson, Judges.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Collette C.

* Retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
** Retired judge of the Orange Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

Cavalier and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and

Respondent.

## I.

## INTRODUCTION

Defendant and appellant, Rafael Torres-Bustos, was convicted of two counts of

oral copulation of an intoxicated person (Pen. Code, § 288a, subd. (i); counts 1 and 2).[1]

The trial court sentenced him to eight years in prison.  On appeal, he argues the trial court

prejudicially erred by (1) failing to sua sponte instruct the jury on the mistake-of-fact

defense and (2) not allowing defense counsel to request a mistake-of-fact instruction.  We

disagree and affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was an emergency room nurse at Eisenhower Hospital.  The victim,

E.H., was suffering from alcoholism and trying to quit drinking.  He made several visits

to Eisenhower to treat his alcoholism and alcohol withdrawal symptoms.  During one of

his visits, he was upset and crying because he had relapsed after a period of sobriety.

Defendant approached him and tried to console him.

Later that night, defendant texted E.H., although E.H. did not know how defendant

got his number.  Two days later, defendant texted E.H. again, asking how he was doing.

E.H. responded with, "'Doing bad.'"  Defendant replied, "'What happened?  Are you

---

[1]  Unless otherwise noted, all further statutory references are to the Penal Code.

2

okay?'" E.H. did not respond. Defendant followed up with, "'Is there anything I can help you with?'"

Two hours later, E.H. sent defendant an incomprehensible text that contained no words. At the time, E.H. could not communicate clearly because he was intoxicated. Defendant then sent E.H. a series of texts asking whether E.H. was at his home. E.H. responded, "'I just need more [Valium] . . . to stop drinking.'" Defendant asked E.H., "'Do you want me to come over?'" to which E.H. replied, "'No.'" E.H. tried to text defendant that he would be okay. Defendant asked if E.H. was with anyone, and E.H. replied "'no.'" Defendant then texted, "'Please let me come over. I can help you.'" E.H. gave defendant his address.

By that point, E.H. was in bed trying to go to sleep by drinking alcohol and taking Seroquel, an antipsychotic medicine. E.H. saw defendant walk into his apartment's front door, which was unlocked, and heard him call for E.H. by name. E.H. saw defendant walk into his bedroom, but then fell asleep or passed out.

The next thing E.H. remembered was waking up and finding defendant with his mouth on E.H.'s penis. E.H.'s shorts and underwear were pulled down, and defendant was kneeling on the side of the bed while orally copulating E.H. E.H. pulled away or pushed defendant and said, "'What the f—k are you doing?'" E.H. then passed out. E.H. recalled waking up later to defendant straddling him and "grinding" his body against E.H.'s body. E.H. later woke up to his friends checking in on him, and found defendant lying next to him in his bed.

3

The next day, E.H. woke up to defendant in his apartment. Later that day, defendant and E.H. went to the store to purchase vodka for E.H. When they returned, E.H. drank the vodka and eventually passed out from intoxication. E.H. briefly awoke periodically. At one point, E.H. woke up to defendant standing next to him while rubbing his penis on E.H.'s lips. E.H. said, "'What the f—k are you doing?'" Defendant had his shirt off, pulled E.H. toward him, and told E.H. to suck his nipples.

E.H. reported the incidents to the police a few days later. An investigator had E.H. conduct a pretext call to defendant. During the call, defendant apologized several times, said that his behavior was "messed up," and acknowledged that he knew E.H. was intoxicated during both incidents. Defendant also described the incidents as a "spur of the moment thing and it just happened" and agreed with E.H. that his behavior was "f— ked up."

Defendant was charged with two counts of unlawful copulation of an intoxicated person (§ 288a, subd. (i); counts 1 & 2), one count of first degree burglary (§ 459; count 3) and one count of misdemeanor sexual battery (§ 243.4, subd. (c); count 4).[2] The jury convicted defendant on counts 1 and 2 and acquitted him on count 3. The jury could not reach a verdict on count 4, so the trial court declared a mistrial as to that count.

---

[2] Count 4 pertained to a different victim, M.S.

4

III.

DISCUSSION

Defendant contends the trial court prejudicially erred by failing to instruct the jury on the mistake-of-fact defense and denying his counsel the opportunity to request a mistake-of-fact instruction. We disagree the trial court erred and, even if it did, any resulting error was harmless.

A. *Additional Background*

During trial, the parties submitted multiple drafts of jury instructions to the trial court. After the parties submitted their fourth and final set of instructions, the trial court listed each instruction and asked if there were any objections. Counsel for both parties said no. After the close of evidence, defense counsel asked the trial court "to be heard briefly on instructions before the jury's instructed." The trial court denied the request and instructed the jury.

The trial court instructed the jury with CALCRIM No. 1017 (Oral Copulation of an Intoxicated Person), which stated in relevant part: "The defendant is charged in [c]ounts 1 and 2 with oral copulation of a person while that person was intoxicated, in violation of Penal Code section 288A, subdivision (I). To prove that the defendant is guilty of this crime, the People must prove that: one, the defendant committed an act of oral copulation with another person; two, an intoxicating substance prevented the other person from resisting, and; three, the defendant knew or reasonably should have known that the effect of an intoxicating substance prevented the other person from resisting. . . .

[¶] [¶] A person is prevented from resisting if he or she is so intoxicated that he or she cannot give legal consent.  In order to give legal consent, a person must be able to exercise reasonable judgment.  In other words, the person must be able to understand and weigh the physical nature of the act, its moral character, and probable consequences.  Legal consent is . . . consent given freely and voluntarily by someone who knows the nature of the act involved."

CALCRIM No. 1017 contains the following optional, bracketed language, which the trial court did not give:  "<Defense: Reasonable Belief Capable of Consent> [The defendant is not guilty of this crime if (he/she) actually and reasonably believed that the person was capable of consenting to oral copulation, even if the defendant's belief was wrong.  The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the woman was capable of consenting.  If the People have not met this burden, you must find the defendant not guilty.]"  Defendant contends the trial court erred by failing to instruct the jury with this bracketed language.

B.  *Applicable Law and Standard of Review*

"[A] trial court needs to give only those requested instructions that are supported by substantial evidence.  [Citation.]  In deciding whether defendant was entitled to the instructions urged, we take the proffered evidence as true, 'regardless of whether it was of a character to inspire belief.  [Citations.]'  [Citation.]  '"Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused."

6

[Citations.]' [Citation.] Even so, the test is not whether *any* evidence is presented, no matter how weak. Instead, the jury must be instructed when there is evidence that 'deserve[s] consideration by the jury, i.e., "evidence from which a jury composed of reasonable [people] could have concluded"' that the specific facts supporting the instruction existed." (*People v. Petznick* (2003) 114 Cal.App.4th 663, 677.) "'The duty to instruct, sua sponte, on general principles closely and openly connected with the facts before the court also encompasses an obligation to instruct on defenses,'" (*People v. Lopez* (1992) 11 Cal.App.4th 1115, 1120), but only if they are "supported by substantial evidence [and] . . . are not inconsistent with the defendant's theory of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.) We review the trial court's failure to give a jury instruction de novo. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 824.)

C. *Analysis*

We assume without deciding that defendant did not forfeit his claim of instructional error, as the People contend, and that substantial evidence supported instructing the jury with the bracketed language of CALCRIM No. 1017, as defendant contends. We conclude, however, that the trial court did not err by failing to instruct the jury with the bracketed language because it "'merely duplicates other instructions.'" (*People v. Hartsch* (2010) 49 Cal.4th 472, 500.)

CALCRIM No. 1017 told the jury that the offense of orally copulating an intoxicated person has three elements, the third being that defendant "knew or reasonably should have known that the effect of an (intoxicating . . .) substance prevented [E.H.]

7

from resisting." The instruction also explained that "[a] person is *prevented from resisting* if he or she is so intoxicated that he or she cannot give legal consent" and that "[i]n order to give legal consent, a person must be able to exercise reasonable judgment."

The optional, bracketed language in CALCRIM No. 1017 is materially identical to these instructions. CALCRIM No. 1017 provides that the defendant is guilty only if he "knew or reasonably should have known" that the victim was so intoxicated that he could not give legal consent to the defendant's conduct. The bracketed language rephrases the same principle by saying the defendant is not guilty if he "actually and reasonably believed" the victim could give legal consent. The bracketed language thus effectively repeats the same principle already contained in CALCRIM No. 1017. The language simply restates the third element of the offense of orally copulating an intoxicated person and the definition of "prevented from resisting" in the form of a defense.

*People v. Lujano* (2017) 15 Cal.App.5th 187 (*Lujano*) is directly on point. There, the court reached the same conclusion when addressing identical language from CALCRIM No. 1032 (sodomy of an intoxicated person), which mirrors CALCRIM No. 1017 in relevant part. CALCRIM No. 1032 explains the third element of the offense of sodomy of an intoxicated person is that "[t]he defendant knew or reasonably should have known that the effect of that substance prevented the other person from resisting." CALCRIM No. 1032 then defines "prevented from resisting" in the same manner as does CALCRIM No. 1017. CALCRIM No. 1032 also includes the same bracketed, optional language regarding consent as in CALCRIM No. 1017: "The defendant is not guilty of

8

this crime if [he] actually and reasonably believed that the other person was capable of consenting to oral copulation, even if that belief was wrong. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the [other person] was capable of consenting. If the People have not met this burden, you must find the defendant not guilty."

In *Lujano*, the defendant argued the trial court erred by refusing to give the bracketed language from CALCRIM No. 1032. (*Lujano*, *supra*, 15 Cal.App.5th at p. 192.) The *Lujano* court disagreed, reasoning that the optional bracketed language simply restates the third element of sodomy of an intoxicated person by "reformulating that element in the negative" and "incorporating the definition of 'prevented from resisting.'" (*Id*. at p. 193.) The *Lujano* court explained: "[I]nstead of saying that the defendant can be guilty only if he knew or reasonably should have known that the victim was prevented from resisting, the optional [bracketed] language says that the defendant is not guilty if he actually and reasonably believed that the victim was capable of consenting." (*Ibid*.) The *Lujano* court therefore held that because "the defense at issue here—that the defendant actually and reasonably believed that the victim was capable of giving legal consent—is merely the negation of an element of the offense," the trial court did not have a sua sponte duty to give the bracketed language of CALCRIM No. 1032. (*Ibid*.)

We agree with *Lujano* and find its reasoning applies fully here. Like the subject bracketed language of CALCRIM No. 1032 at issue in *Lujano*, the bracketed language in CALCRIM No. 1017 simply restates the third element of the offense of orally copulating

9

an intoxicated person by "reformulating the element in the negative" and "incorporating the definition of 'prevented from resisting.'" (*Lujano*, *supra*, 15 Cal.App.5th at p. 193.) "[I]nstead of saying that the defendant can be guilty only if he knew or reasonably should have known that the victim was prevented from resisting, the optional language says that the defendant is not guilty if he actually and reasonably believed that the victim was capable of consenting." (*Ibid*.) Following *Lujano*, we conclude the trial court did not have a sua sponte duty to instruct the jury with the bracketed language of CALCRIM No. 1017 and did not err in failing to do so. (See *ibid*.)

Even if the trial court did err, "the error was harmless under any standard." (*Lujano*, *supra*, 15 Cal.App.5th at p. 195.) "Omission of an instruction is harmless beyond a reasonable doubt if '"the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions."' [Citation.]" (*Id*. at pp. 195-196.) Because the jury found defendant guilty of orally copulating an intoxicated person, the jury necessarily found that defendant knew or reasonably should have known that E.H. was so intoxicated that he lacked the capacity to give legal consent. The jury thus "'necessarily found any belief by defendant that the victim had capacity to consent was unreasonable.' [Citations.]" (*Id*. at p. 196.) "Because the factual question posed by the omitted language on reasonable belief in the capacity to consent was necessarily resolved against [defendant] under other, properly given parts of CALCRIM No. [1017], the omission of the requested language was

10

harmless under any standard." (*Ibid*.)  It follows that the trial court did not prejudicially err by precluding defense counsel from requesting a mistake-of-fact instruction.

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

We concur:

<u>MILLER</u>
      Acting P. J.

<u>MENETREZ</u>
      J.