Filed 11/16/21  P. v. Spence CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ALARIC FRANCIS SPENCE,<br><br>　　　Defendant and Appellant. | B304646<br><br>Los Angeles County<br>Super. Ct. No. BA458608 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig Richman, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Alaric Francis Spence of rape of an intoxicated person (Pen. Code, § 261, subd. (a)(3)), and the trial court sentenced him to six years in prison.[1] Spence appeals, arguing the court prejudicially erred by refusing to instruct the jury that an actual and reasonable belief that the victim was capable of consenting is a defense.

Consistent with *People v. Lujano* (2017) 15 Cal.App.5th 187 (*Lujano*), we conclude the court did not err because the requested instruction merely duplicated other instructions that were properly given. Spence also cannot establish prejudice, because, in reaching a guilty verdict under the given instructions, the jury necessarily resolved the factual question posed by the requested instruction against him. And, in any event, the evidence was insufficient to give the requested instruction. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

Consistent with our standard of review, we state the facts and the evidentiary support for the requested instruction in the light most favorable to the defendant, Spence. (*People v. Wright* (2015) 242 Cal.App.4th 1461, 1483; see *People v. Wilson* (1967) 66 Cal.2d 749, 763 ["Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused."].)

An information charged Spence with kidnapping for rape (§ 209, subd. (b)(1)), rape of an unconscious person (§ 261, subd. (a)(4)), and rape of an intoxicated person (§ 261, subd. (a)(3)), all perpetrated against a single alleged victim, C.R.

The evidence at trial showed, on June 22, 2017, C.R. met with friends for happy hour before attending a concert

---

[1]     Statutory references are to the Penal Code.

2

at Staples Center. Around 6:30 p.m., C.R. began drinking at a restaurant across the street from the concert venue. C.R. and her friends arrived at Staples Center between 7:30 and 8:00 p.m., where C.R. consumed more alcohol and ate a marijuana edible. At about 10:00 p.m., C.R. texted her boyfriend to say she was doing well and would be home later.

After the concert, C.R. and a friend took an Uber to a bar in downtown Los Angeles. They arrived around 11:00 p.m. Around midnight, they took an Uber to another bar, where C.R. recalled having another drink and obtaining quarters to play arcade games. This was the last thing she could remember from that night.

C.R. and her friends went to another bar later that night, where C.R. had more drinks. At some point, the bar refused to serve C.R. more drinks because she was visibly too drunk. She was swaying from side to side, giggling a lot, and could not walk.

Around 1:30 or 1:45 a.m., C.R.'s friends lost track of her and could not find her for about 20 minutes. A female employee eventually found C.R. in the women's restroom. She was in one of the stalls with her head over the toilet.

The bar closed at 2:00 a.m. and the group was forced to leave. C.R.'s friends helped her outside by holding her up on their shoulders. She could not walk by herself. Outside the bar, C.R. was "pretty slurry" but became "chatty and somewhat at least seeming like okay" after 30 minutes or so.

After leaving the bar, C.R. and one of her friends walked around downtown Los Angeles looking for food. At 2:42 a.m., a surveillance camera recorded C.R. running down the street. Twenty minutes later, C.R. got into Spence's car.

Surveillance video showed C.R. getting into an Uber driven by Spence at 3:02 a.m. She appeared "wobbly and confused" and she was slurring her words when she got in the car.

At 3:53 a.m., surveillance video showed Spence's car arrive at a motel. At 4:02 a.m., the video showed Spence carrying C.R. into a motel room. At 6:15 a.m., Spence left the motel room for about 15 minutes before returning. He left the motel for good at 7:00 a.m.

At 7:30 a.m., C.R.'s alarm woke her up. She was naked from the waist down, wearing no bra or underwear, in "some motel room" she did not recognize. She felt like something had been inserted in her vagina and her lower back hurt. She could not remember what happened and was scared.[2]

C.R. called her boyfriend, who found her in a motel room in North Hollywood. Her phone's Uber data showed she had requested a ride to her boyfriend's apartment and the trip ended there at 3:29 a.m. The driver's name was listed as "Alaric S."

---

[2] At 3:19 a.m., C.R.'s male friend texted her to ask whether she was okay. At 3:20 a.m., he texted her "tell me where you want me to be please." Spence emphasizes that, when C.R. awoke, she thought she possibly had a one-night stand with this male friend. Spence's intended insinuation appears to be that C.R. may have suggested to her male friend that she would have intercourse with him and, thus, she may also have consented to intercourse with Spence. Because the crime of rape of an intoxicated person is premised not on the victim's lack of *actual* consent, but rather on the victim's lack of *capacity* to give legal consent, the evidence Spence emphasizes is irrelevant, regardless of whether it supports his insinuation. (See *Lujano, supra,* 15 Cal.App.5th at p. 194; § 261, subd. (a)(2)–(3); cf. CALCRIM Nos. 1000, 1002.)

There were two used condoms inside the motel room's trashcan. Otherwise, the room was "extremely clean," and it did not appear that anyone slept under the covers of the bed. DNA retrieved from inside the condoms belonged to Spence.

The motel's receptionist identified Spence, both in a photo array and in court, as the person who rented the room. According to the receptionist, Spence had tried to pay for the room with a credit card, but ended up paying with cash. He was short about $30 for the room, but returned later to pay the balance.

A nurse who specializes in sexual assaults examined C.R. The nurse concluded C.R.'s condition was consistent with trauma one could experience during a blackout with alcohol intoxication and probable sexual assault.

Spence chose not to testify.

The jury convicted Spence of rape of an intoxicated person and acquitted him on the other counts. The court sentenced Spence to six years in prison.

## DISCUSSION

" 'In criminal cases, a trial court must instruct sua sponte on the " ' "general principles of law relevant to the issues raised by the evidence," ' " that is, those principles " ' "closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " [Citation.] By contrast, " 'pinpoint' " instructions "relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi. [Citation.] They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte." [Citation.]' [Citation.] In addition, the court ' "need

not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation]." ' " (*Lujano, supra,* 15 Cal.App.5th at p. 191; *People v. Hill* (2015) 236 Cal.App.4th 1100, 1118–1119; *People v. Hartsch* (2010) 49 Cal.4th 472, 500 (*Hartsch*); see also *People v. Williams* (2016) 1 Cal.5th 1166, 1193; *People v. Bolden* (2002) 29 Cal.4th 515, 558 (*Bolden*).)

The trial court used CALCRIM No. 1002 to instruct the jury on the elements of rape of an intoxicated person. As given in this case, the instruction defined the four elements of the crime as follows: "1. The defendant had sexual intercourse with a woman; [¶] 2. He and the woman were not married to each other at the time of the intercourse; [¶] 3. The effect of an intoxicating substance prevented the woman from resisting; [¶] AND [¶] 4. The defendant knew or reasonably should have known that the effect of an intoxicating substance prevented the woman from resisting." (See CALCRIM No. 1002.) Regarding the phrase "prevented from resisting," the instruction explained: "A person is prevented from resisting if he or she is so intoxicated that he or she cannot give legal consent. In order to give legal consent, a person must be able to exercise reasonable judgment. In other words, the person must be able to understand and weigh the physical nature of the act, its moral character, and probable consequences. Legal consent is consent given freely and voluntarily by someone who knows the nature of the act involved." (See *ibid.*)

Spence requested the court also instruct the jury with the following optional language from CALCRIM No. 1002: "The defendant is not guilty of this crime if he actually and reasonably believed that the woman was capable of consenting to sexual

6

intercourse, even if that belief was wrong. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the woman was capable of consenting. If the People have not met this burden, you must find the defendant not guilty."[3] The court denied the request on the ground that there was no evidence Spence had a "reasonable belief as to consent."

Spence contends the trial court erred by refusing to give the jury the optional language he requested. In *Lujano*, our colleagues in Division Seven rejected a virtually identical claim of error on the ground that the optional language merely duplicates the parts of the given instruction that specify the scienter element of the offense and define the term " 'prevented from resisting.' " (*Lujano, supra,* 15 Cal.App.5th at pp. 191–192.) We agree with the *Lujano* court's reasoning and likewise conclude the trial court did not err in refusing to give the optional language.

The defendant in *Lujano* appealed a conviction for sodomy of an intoxicated person. (§ 286, subd. (i).) Like Spence, he argued the trial court erred by refusing to instruct the jury that an actual and reasonable belief that the victim was capable of consenting is a defense to the crime. (*Lujano, supra,* 15 Cal.App.5th at p. 189.) The trial court instructed the jury with CALCRIM No. 1032, which—like CALCRIM No. 1002—states the defendant is guilty only if the prosecution proves " '[t]he defendant knew or reasonably should have known that the effect

---

[3]     The People dispute Spence's assertion that he requested the optional language from CALCRIM No. 1002. As it is irrelevant to our disposition, we will assume Spence made an adequate request.

of [an intoxicating] substance prevented the other person from resisting.'" (*Lujano,* at pp. 191–192, citing CALCRIM No. 1032; cf. CALCRIM No. 1002.) Also like CALCRIM No. 1002, CALCRIM No. 1032 explains that " '[a] person is prevented from resisting if he or she is so intoxicated that he or she cannot give legal consent.' "[4] (*Lujano,* at p. 192, citing CALCRIM No. 1032; cf. CALCRIM No. 1002.) And, like CALCRIM No. 1002, there is optional language for CALCRIM No. 1032 that states: " 'The defendant is not guilty of this crime if he actually and reasonably believed that the other person was capable of consenting to the act, even if that belief was wrong.' "[5] (*Lujano,* at p. 192, quoting CALCRIM No. 1032; cf. CALCRIM No. 1002.)

The *Lujano* court concluded the refusal to give the optional language was not error, because the language amounted to a "pinpoint" instruction that "merely duplicates other parts of the instruction given, namely, the [knew or reasonably should have known] element and the definition of 'prevented from resisting.' "

---

[4] Like CALCRIM No. 1002, CALCRIM No. 1032 continues: "In order to give legal consent, a person must be able to exercise reasonable judgment. In other words, the person must be able to understand and weigh the physical nature of the act, its moral character, and probable consequences. Legal consent is consent given freely and voluntarily by someone who knows the nature of the act involved." (CALCRIM No. 1032; cf. CALCRIM No. 1002.)

[5] Like the optional language in CALCRIM No. 1002, the optional language in CALCRIM No. 1032 states: "The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person was capable of consenting. If the People have not met this burden, you must find the defendant not guilty." (CALCRIM No. 1032; cf. CALCRIM No. 1002.)

(*Lujano, supra,* 15 Cal.App.5th at p. 192.) The court explained: "The optional language that Lujano requested restates the [knew or reasonably should have known] element of the offense by (1) reformulating that element in the negative and (2) incorporating the definition of 'prevented from resisting.' That is, instead of saying that the defendant can be guilty only if he knew or reasonably should have known that the victim was prevented from resisting, the optional language says that the defendant is not guilty if he actually and reasonably believed that the victim was capable of consenting." (*Id.* at p. 193.) Because the optional language did "no more than pinpoint a key component of the defendant's case by restating other parts of the instruction that [were] required," the trial court had no duty to use the language, even if substantial evidence supported it. (*Id.* at pp. 193–194; see *Bolden, supra,* 29 Cal.4th at p. 558 ["[A] trial court need not give a pinpoint instruction if it . . . merely duplicates other instructions."]; *Hartsch, supra,* 49 Cal.4th at p. 500.)

Spence contends *Lujano* was wrongly decided for two reasons. First, he maintains the *Lujano* court incorrectly construed the optional language in CALCRIM No. 1032 to be a pinpoint instruction—a holding he claims is "in tension" with *People v. Molano* (2019) 7 Cal.5th 620 (*Molano*). Second, he argues *Lujano* incorrectly "implies that the language of the requested instruction can never, under any circumstances, add anything to the standard language of the instruction." We disagree on both counts.

*Lujano* is not in tension with *Molano*. The defendant in *Molano* appealed his conviction for murder committed during a forcible rape—a charge that gives rise to a "sua sponte duty to give a *Mayberry* instruction about good faith and reasonable

9

belief in the victim's consent ' "if it appears . . . the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." ' "[6] (*Molano, supra,* 7 Cal.5th at p. 667.) Unlike the charge in *Molano*, the *Lujano* court explained a charge of sodomy (or rape) of an intoxicated person does not implicate *Mayberry*, because the elements of the offenses are critically different: "[A]lthough it is *not* an element of forcible rape that the defendant *believed* the victim did not consent, it *is* an element of sodomy (or rape) by intoxication that the defendant knew or reasonably should have known the victim was incapable of consenting." (*Lujano, supra,* 15 Cal.App.5th at pp. 194–195, second italics added; see §§ 261, subd. (a)(2)–(3), 262, subd. (a)(1)–(2), 286, subd. (i); CALCRIM Nos. 1000, 1002, 1032.) Thus, while the defense described in the optional language of CALCRIM No. 1032 (and CALCRIM No. 1002) "is merely [a restated] negation of an element of the offense," the *Mayberry* defense at issue in *Molano* is an "affirmative defense" that is not "already covered by the required instructions." (*Lujano,* at pp. 194–195.) The trial court therefore has a sua sponte duty to give a *Mayberry* instruction for a charge of forcible rape (as in *Molano*), but does not have the same duty to give the optional language instruction for a charge of sodomy (or rape) of an intoxicated person (as in *Lujano*). Unlike an instruction on an

---

[6]      In *People v. Mayberry* (1975) 15 Cal.3d 143, the Supreme Court held a defendant's reasonable and good faith mistake of fact regarding a person's consent to sexual intercourse is a defense to rape, because "one is incapable of committing a crime who commits an act under a mistake of fact disproving any criminal intent." (*Id.* at pp. 154–155.)

affirmative defense, the optional language "does no more than pinpoint a key component of the defendant's case by restating other parts of the instruction that are required." (*Lujano,* at pp. 193, 195.) Spence asserts the optional language is a "*Mayberry*-type instruction," but he entirely ignores the critical differences the *Lujano* court identified.

Spence also fails to demonstrate that the optional language adds anything to the standard language of CALCRIM No. 1002. He argues the optional language "is the only language that makes clear that the prosecution must disprove the existence of the defendant's actual belief in the capacity for consent, whereas the other language of the instruction, particularly paragraph 4, permits a conviction if the defendant merely 'reasonably should have known' that the woman was not capable of giving consent." This argument ignores that the prosecution overcomes the defense described in the optional language by proving *either* that the defendant did not "actually" believe the victim was capable of consent, *or* that the defendant did not "*reasonably* believe" the victim was capable of consent.[7] (CALCRIM No. 1002, italics added.) Because CALCRIM No. 1002 already instructs the jury that the prosecution must prove the defendant "*knew or reasonably should have known* that the effect of [an intoxicating] substance prevented the woman from resisting," it adds nothing to instruct the jury that the prosecution must prove the defendant did not "reasonably believe that the woman was

---

[7] The prosecution overcomes the defense by disproving either element of the defense because a defendant is not guilty of the crime only "if he actually *and* reasonably believed that the woman was capable of consenting to sexual intercourse, even if that belief was wrong." (CALCRIM No. 1002, italics added.)

11

capable of consenting to sexual intercourse." (*Ibid.*, italics added; see *Lujano, supra,* 15 Cal.App.5th at p. 193.) Indeed, *People v. Giardino* (2000) 82 Cal.App.4th 454—the case upon which Spence principally relies—recognized exactly this correlation between the elements of the offense and the defense described in CALCRIM No. 1002's optional language. (See *Giardino,* at p. 472 ["As section 261(a)(3) itself provides, the accused is guilty only if the victim's incapacitating level of intoxication 'was known, or reasonably should have been known by the accused.' An honest *and reasonable* but mistaken belief that a sexual partner is not too intoxicated to give legal consent to sexual intercourse is a defense to rape by intoxication." (Italics added.)].)

Because the optional language merely duplicates other instructions that were properly given, the trial court did not err by refusing to give the requested instruction. (See *Lujano, supra,* 15 Cal.App.5th at pp. 193–195; *Bolden, supra,* 29 Cal.4th at p. 558.)

For similar reasons, Spence cannot show prejudice under any standard, even if the trial court was required to instruct the jury with the optional language. (See *Chapman v. State of California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 837.) Omission of an instruction is harmless beyond a reasonable doubt if " 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' " (*People v. Wright* (2006) 40 Cal.4th 81, 98.) Under the standard CALCRIM No. 1002 instruction, because the jury found Spence guilty of rape of an intoxicated person, it necessarily found he knew or reasonably should have known C.R. was so intoxicated she lacked the capacity to give legal consent. Thus, the jury

12

"necessarily found any belief by defendant that the victim had capacity to consent was unreasonable." (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1246 [finding "that the defendant reasonably should have known the victim could not resist (i.e., give consent)" under standard CALCRIM No. 1002 instruction "meant the jury could not also have found, as a matter of logic, that the defendant had a reasonable belief the victim was capable of giving consent"]; *People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1529 ["A belief that the victim was able to resist could not be reasonable if the perpetrator 'reasonably should have known' that the victim was unable to resist."]; *Lujano, supra,* 15 Cal.App.5th at p. 196.) Because the jury necessarily resolved the factual question on reasonable belief in the capacity to consent against Spence, omission of the requested language was harmless under any standard. (*Lujano,* at p. 196.)

Finally, even if the optional language did not merely duplicate parts of the given instructions, the trial court still properly refused to give it because there was no evidence that Spence reasonably believed C.R. had the capacity to consent. (See *Hartsch, supra,* 49 Cal.4th at p. 500 [the court " 'need not give a pinpoint instruction if it . . . is not supported by substantial evidence' "]; *Molano, supra,* 7 Cal.5th at p. 667 [*Mayberry* instruction required " ' "if there is substantial evidence supportive of such a defense" ' "].)

Spence concedes "certain facts presented to the jury were consistent with the notion that a reasonable person in [Spence's] situation 'should have' known that [C.R.] lacked the capacity to consent, particularly the fact that [Spence] physically carried [C.R.] into the motel room and, of course, the fact that [Spence] had no pre-existing relationship with [C.R.]." However, he

13

maintains other "facts presented to the jury were consistent with the notion that [Spence] *could* have reasonably believed in [C.R.]'s capacity to consent." Support for this notion, Spence argues, can be found in "the fact that [Spence] himself had not been present for any of the drinking and drug use that led up to [C.R.] getting in his car, the fact that [C.R.]'s level of intoxication appeared to wax and wane substantially over time, the fact that [Spence] registered the motel room in his own name, the fact that he stayed in the motel room until 7 a.m., and the fact that he left used condoms in the motel room."

The latter three facts—Spence registering for the motel room in his own name, staying until 7:00 a.m., and leaving used condoms—might establish Spence *actually* believed C.R. had the capacity to consent, but these facts prove nothing about whether Spence *reasonably* held this belief, because they reveal nothing about what he knew or reasonably should have known before having intercourse with C.R. The fact that Spence was not present for C.R.'s drinking or drug use is similarly irrelevant to what he reasonably believed about her capacity to consent, particularly in light of the undisputed video evidence showing he physically carried C.R. into the motel room. Finally, the evidence that *earlier in the night* C.R.'s intoxication appeared to wax and wane proved nothing about what Spence reasonably believed about her capacity to consent. Spence admits he was not present when surveillance video showed C.R. running down the street and there was no evidence that her intoxication "waned" after Spence physically carried her into the motel. The evidence, viewed most favorably to Spence, was insufficient to support a finding that he reasonably believed C.R. was capable of consenting to intercourse.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

LAVIN, Acting P. J.

HILL, J.*

---

*       Judge of the Santa Barbara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15