Filed 2/16/23  P. v. Upshaw CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DARRIUS DEJAUN UPSHAW,<br><br>        Defendant and Appellant. | A163622<br><br>(Humboldt County Super. Ct. No. CR2002120) |

Defendant Darrius Dejaun Upshaw appeals after a court trial in which he was found guilty of sex offenses against John Doe 1 (Doe 1) and John Doe 2 (Doe 2).  On appeal, defendant argues:  (1) the evidence is insufficient to support the two convictions involving Doe 2; (2) the court imposed a restitution fine and parole revocation restitution fine exceeding the statutory maximum; and (3) clerical errors in the abstract of judgment need to be corrected.  We agree the restitution fine and the abstract should be modified.  In all other respects, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

As relevant here, the trial court found defendant guilty of oral copulation of an unconscious person—Doe 1 (Pen. Code, § 287, subd. (f),[1] count 2), and oral copulation by intoxication—Doe 2 (§ 287, subd. (i), counts 3

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

and 5[2]).  The court sentenced defendant to a total of 10 years in prison:  six years for count 2, and consecutive 2-year terms for counts 3 and 5.

At the time of the incidents, Doe 1, Doe 2, and defendant belonged to the same fraternity.  The evidence at trial included the testimony of both victims, which established the following.

At a fraternity party on May 18, 2020, Doe 1 drank three to four glasses of wine, became intoxicated, and fell asleep on a couch.  He later awoke with his pants and underwear down, and someone orally copulating him.  He pretended to be asleep and the oral copulation went on for about 40 minutes.  The perpetrator eventually stopped, watched pornography on a cellphone, masturbated, ejaculated on Doe 1's face, then wiped it off with a blanket.  Doe 1 recognized the perpetrator as defendant.  Doe 1 reported the incident to a fraternity brother that evening, and to the police the following day.

On March 7, 2020, Doe 2 arrived at a fraternity party around 8:30 p.m., had more than five drinks, smoked marijuana, then blacked out by around 9:30 p.m.  He was "really heavily intoxicated" and was not conscious, but he was still moving around.  He could recall, however, vomiting all over himself while lying on a couch and aspirating on his own vomit.[3]  He could also recall defendant picking him up, stripping him of his soiled clothing, carrying him to defendant's bedroom, laying him down, and orally copulating him.  Doe 2 pretended to be asleep and did not move during the sexual act, then he fell asleep when defendant was done even though he wanted to leave.

---

[2]    As discussed, *post*, the abstract refers to counts 3 and 5 as oral copulation by anesthesia or controlled substance.

[3]    Doe 2 told the police that defendant saved his life when he was aspirating on his own vomit.

On April 19, 2020, defendant drove Doe 2 to a "movie night" with some fraternity brothers and others. Defendant gave Doe 2 multiple drinks, which he drank. Doe 2's last memory of the movie night was vomiting with his head hanging outside the window of defendant's car. His next memory was being on a couch at the fraternity house, with defendant orally copulating him and subsequently ejaculating on his face and wiping it off. During this second incident, Doe 2 was "somewhat awake" or "somewhat aware."

In both incidents, Doe 2 pretended to be asleep and did not object because he was "too intoxicated and scared about [defendant's] military background." Doe 2 did not tell anyone about either incident until Doe 1 reported what defendant did to him.

R.B., a fraternity brother, testified that after learning about the incident between defendant and Doe 1, he mentioned the subject of sexual assault to Doe 2. R.B. suspected something might have happened to Doe 2 because defendant said that he took off Doe 2's clothes to wash them, which was unusual. At that point, Doe 2 told R.B. that defendant sexually assaulted him three times.[4]

In his defense, defendant testified that he engaged in consensual sexual activity with Doe 1, who was not intoxicated. Doe 1 watched heterosexual pornography while defendant orally copulated him. Defendant did not masturbate or ejaculate during this encounter. Moreover, in March 2020, defendant and Doe 2 engaged in consensual sexual activity before Doe 2 vomited on himself. Defendant acknowledged Doe 2 would have been too

---

[4]   Doe 2 testified he told R.B. that defendant sexually assaulted him twice. He had told the police that defendant sexually assaulted him three times, but later made clear there were only two sexual assaults and the third incident was a "traumatic nightmare."

3

intoxicated to consent to sex at the point when defendant found him vomiting on the couch.

Defendant denied having sexual contact with Doe 2 on the night in question in April 2020, and he acknowledged that Doe 2 would have been too intoxicated to consent to sex that night. Defendant had regular, friendly contact with Doe 2 after both of the alleged incidents.

## DISCUSSION

### A.  Sufficiency of the Evidence

Defendant argues his convictions for oral copulation of an intoxicated person—counts 3 and 5 involving Doe 2—must be reversed due to insufficient evidence. As to both of these counts, defendant acknowledges there was substantial evidence that he orally copulated Doe 2 and that Doe 2 was heavily intoxicated. But in urging reversal, he claims the evidence was insufficient to prove Doe 2 was so intoxicated that he was " 'prevented from resisting,' " i.e., that he lacked the legal capacity to give consent. Defendant further contends there was insufficient evidence that he knew or reasonably should have known Doe 2 was legally incapable of giving consent. We are unpersuaded.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]  Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Oral copulation by intoxication is "an act of oral copulation, where the victim is *prevented from resisting* by any intoxicating or anesthetic substance,

4

or any controlled substance, and this condition was known, or reasonably should have been known by the accused." (§ 287, subd. (i), italics added.) "[T]he statutory requirement that the victim was prevented from resisting by the intoxicating or anesthetic or controlled substance has been interpreted to mean that the victim was 'not capable of giving legal consent because of intoxication.' " (*People v. Lujano* (2017) 15 Cal.App.5th 187, 193.) "Legal capacity is the ability to exercise reasonable judgment, i.e., to understand and weigh not only the physical nature of the act, but also its moral character and probable consequences." (*People v. Giardino* (2000) 82 Cal.App.4th 454, 466 (*Giardino*).) "It is not enough that the victim was intoxicated to some degree, or that the intoxication reduced the victim's sexual inhibitions. . . . Instead, the level of intoxication and the resulting mental impairment must have been so great that the victim could no longer exercise reasonable judgment concerning that issue." (*Id.* at pp. 466–467.) Whether or not the level of the victim's intoxication deprived the victim of legal capacity is a question of fact to be decided after considering all of the circumstances. (*Id.* at pp. 466, 470.)

In this case, the evidence amply supports the conclusion that Doe 2 was so intoxicated that he was incapable of exercising reasonable judgment during the March 2020 incident. As recounted above, Doe 2 had consumed more than five drinks, smoked marijuana, and blacked out. After vomiting profusely and aspirating on his own vomit, he recalled defendant picking him up, stripping him, carrying him to his bedroom, laying him down, and orally copulating him. Doe 2 pretended to be asleep, and though he was conscious "to an extent," he was "heavily intoxicated" and unable to move. He did not say or do anything to stop defendant because he was "too intoxicated to move." While Doe 2's testimony established he had some degree of

5

consciousness that a physical act was being performed on him and that he feared defendant, the trial court could reasonably find that Doe 2 lacked the ability to exercise reasonable judgment due to his intoxication. (*Giardino*, *supra*, 82 Cal.App.4th at p. 466.)

Much of the same evidence—particularly Doe 2's testimony that he was vomiting profusely, had to be stripped of his soiled clothing and physically carried to defendant's bedroom, then had his eyes closed throughout the sexual act—also amply supports the conclusion that defendant knew or should have known Doe 2 was so intoxicated that he could not legally consent to the sexual act. Indeed, though defendant claimed his sexual activity with Doe 2 occurred before Doe 2 vomited on himself, defendant acknowledged that, in the state Doe 2 was in when he vomited on himself, Doe 2 was too intoxicated to consent to sex. Whether or not the sexual activity occurred before or after Doe 2 vomited was a question of fact, and the trial court evidently credited the testimony of Doe 2. As a reviewing court, we cannot reweigh the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

As for the April 2020 incident, the evidence also amply established that Doe 2 was so intoxicated that he was prevented from resisting. After the movie night, Doe 2 vomited while in defendant's car. When they got to the fraternity house, defendant laid Doe 2 down on a couch and orally copulated him. Again, Doe 2 testified he pretended to be asleep and did not object in part because he was "too intoxicated to say anything." Doe 2 indicated he was "somewhat awake" and had thoughts while lying there about his physical safety, but when asked if he was "calculating in [his] mind what might happen if [he] said no," Doe 2 replied, "No, because I was heavily intoxicated." Indeed, defendant acknowledged that Doe 2 was blackout drunk, did not appear conscious at the fraternity house, and "would have been too

6

intoxicated to consent." Though defendant denied engaging in any sexual activity that night, the trial court could properly credit Doe 2's testimony that an assault occurred.

Defendant next contends reversal is warranted because there was "no medical or psychological evidence presented to prove that the amount of alcohol and/or drugs ingested by [Doe 2] on the two evenings in question would have rendered [Doe 2's] brain incapable of understanding what was happening with [defendant]." But no such medical or psychological evidence was necessary to establish Doe 2's lack of legal capacity to consent to the sexual acts due to his level of intoxication. (Cf. *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [state of mind evidence "is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction"].)

Defendant further contends Doe 2 did not act in a way that "indicated an inability to understand" at the time of the alleged assaults. We disagree. His profuse vomiting, his laying in and aspirating on his vomit, his passing out in the movie night host's bathroom, his need to be assisted (even carried) by defendant to the places where these sexual acts ultimately took place, were all evidence of John Doe 2's inability to exercise reasonable judgment.

## B. The Restitution Fine

Defendant next contends the trial court erred in imposing a $15,000 restitution fine pursuant to section 1202.4, subdivision (b). Because the maximum allowable fine is $10,000, he argues the court wrongly ordered a $5,000 restitution fine for each conviction. He asks us to remand the matter so that the court can redetermine the amount of the restitution fine and attendant parole revocation restitution fine. The People concede the claimed error, but argue remand is unnecessary "because this court can modify the

7

judgment to reduce the restitution and parole revocation fines to the statutorily authorized maximum amounts of $10,000."

We accept the People's concession that the trial court erred. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483; *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1534.) But we agree with the People that no remand is necessary. Though the court erred in going beyond the statutory maximum, the record reflects the court would have imposed the maximum allowable fine of $10,000. As such, we modify the judgment to reduce the restitution fine imposed and attendant parole revocation restitution fine to $10,000.

## C. Abstract of Judgment

Finally, defendant requests that we correct the abstract of judgment. He contends the abstract wrongly labels his convictions of counts 3 and 5 as " 'Oral Cop. by Anesthesia or Controlled Sub.' " rather than oral copulation of an intoxicated person. Moreover, he claims, the abstract incorrectly reflects a $15,000 fine under item number 13's space for " 'Other orders,' " because that restitution fine was already reflected in item number 9's space for " 'Financial Obligations.' " The People do not object to either modification, noting the first requested modification correctly identifies the applicable Penal Code section that defendant was convicted of violating. Seeing no objection or reason to deny the requests, we will order the abstract modified as requested.

### DISPOSITION

The judgment is modified so as to reduce the restitution fine and attendant parole revocation restitution fine to $10,000. The trial court is directed to amend the abstract of judgment to reflect this modification under item number 9, and to remove it from item number 13. The court is also directed to correct the name of the crimes in counts 3 and 5 in the abstract to "Oral Copulation of an Intoxicated Person" (the court may abbreviate this as

8

necessary to fit the form).  The court shall forward a certified copy of the amended abstract to the Department of Corrections.  In all other respects, the judgment is affirmed.

FUJISAKI, J.

WE CONCUR:

TUCHER, P.J.

RODRÍGUEZ, J.

*People v. Upshaw* (A163622)

9