Filed 9/6/24  P. v. Edwards CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WALTER EDWARDS,<br><br>    Defendant and Appellant. | H050943<br>(Santa Clara County<br> Super. Ct. No. C2101609) |

Defendant Walter Edwards was convicted by a jury of forcible rape of a minor at least 14 years old (Pen. Code, §§ 261, subd. (a)(2), 264, subd. (c)(2))[1] and rape of an intoxicated person (§ 261, subd. (a)(3)).  He argues on appeal that the trial court erred by failing to instruct on the defense of a good faith belief in the victim's consent or capacity to consent and that his trial counsel was ineffective in failing to object to the prosecutor's purported misconduct in closing argument.  We find no prejudicial error and affirm the judgment.

## I.    BACKGROUND

### A.    *The Operative Information*

In February 2023, the Santa Clara County District Attorney charged Edwards by information with forcible rape (§ 261, subd. (a)(2); count 1) with the allegation that the

---

[1] Unspecified statutory references are to the Penal Code.

victim was a minor 14 years of older (§ 264, subd. (c)(2)) and rape of an intoxicated person (§ 261, subd. (a)(3); count 2).[2]

**B.**     *The Trial*

### 1.     *The Percipient Witnesses*

In February 2021, T.D., then 16 years old, was at Edwards's apartment complex with her best friend B.T. and B.T.'s boyfriend, E.E.  Edwards was E.E.'s father.

B.T., T.D., and E.E. had brought a "jumbo size" bottle of Jack Daniel's.  T.D. had "a lot" to drink that night:  T.D. recalled that the group finished about half the bottle, and she estimated she drank "at least . . . five shots" of Jack Daniel's herself.  B.T. estimated that E.E. drank half the bottle, while T.D. drank most of the rest.  They also smoked marijuana.  T.D. felt "[g]oofy," her vision was blurry, she was slurring her words, and B.T. had to help her walk.

T.D. had little memory of the events:  She needed help to walk back to Edwards's apartment, and the next thing she remembered was Edwards on top of her.  She was on Edwards's bed, and both were naked.  T.D. felt Edwards's penis penetrate her vagina.  She did not remember consenting to having sex with Edwards.  At the time, T.D. could still feel the effects of the alcohol.  Walking in on them, B.T. said something like, "[W]hat the fuck are you guys doing?"  B.T. pulled T.D. away and then started beating Edwards.  T.D. put on some clothes and later spoke with officers outside the apartment.

At the earlier preliminary hearing,[3] T.D. was able to recall more detail:  Edwards had told her to "come to bed now" before grabbing her.  T.D. reacted angrily and cursed when Edwards grabbed her, but he pushed her onto the bed.  The next thing T.D.

---

[2] It appears that the operative information contained a clerical error by referring to section 264, subdivision (c)(1) (victim who is under 14 years of age), but the jury convicted Edwards of subdivision (c)(2).

[3] T.D.'s testimony from the preliminary hearing was read into evidence under Evidence Code section 1237.

remembered was that she was on the bed naked. She tried to resist and pushed on his chest. But Edwards pushed her down on her upper arms and shoulders while his penis was inside her vagina.

B.T.'s testimony differed from T.D.'s in that when B.T. found T.D. with Edwards, T.D. was sitting on top of him, albeit with her eyes closed and looking like "she was not there completely." T.D. had on a bra but no pants or underwear, and a sheet was covering her waist. Edwards's hands were on her thighs. B.T. yanked T.D. off Edwards and, outraged, started hitting Edwards. T.D. "[s]napped out of it" and started crying. B.T. accused Edwards of raping her friend, but Edwards protested that he had done nothing.[4]

### 2. *Edwards's Police Interview*

Edwards was interviewed by officers in the early morning hours after the incident, and a video recording of the interview was admitted into evidence and played for the jury.

During the interview, Edwards first denied even touching T.D.: Edwards said that T.D., B.T., and E.E. were drunk, having started drinking the day before and continuing into the night. B.T. and E.E. were arguing and their fight escalated. T.D., on returning to Edwards's apartment, "jumped" into his bed and was "out." Edwards thought T.D. might have "liked" him but admitted that she was drunk.

On learning that T.D. was being examined at the hospital, Edwards acknowledged he had kissed T.D., so his DNA might be on her lips. Edwards said that he and T.D. might have "tried to do something" but that he could not "finish." T.D. had taken off her

---

[4] When arriving at the apartment complex, officers saw several teenagers in a heated altercation with an older man; the teenagers looked like they were slurring their words and officers suspected they had consumed alcohol. A younger teenage female (T.D.) seemed emotional and very upset; she was slurring her words and having a hard time standing.

shirt and pants while Edwards sat on the bed with her. So Edwards took off his pants, too. T.D. was on top of Edwards when B.T. found them, so Edwards theorized that it looked like they were having sex.

Edwards then explained that the tip of his penis had penetrated T.D.'s vagina. T.D. was on top of him, moving around. He did not discuss having sex with T.D.; it "just happened." T.D. had earlier invited him to "come on over here."

Edwards did not know how much T.D. drank from the trio's "big bottles" of Jack Daniel's. But Edwards had seen T.D. stumbling when he let her into the apartment. She had to hold onto him while she walked back to the apartment, and she would probably have been unable to drive a car. Edwards denied raping T.D., saying that T.D. had told him to "come on, come on" and that he knew "when a woman wants a man." Edwards admitted he should not have had sex with her but reiterated that did not know how drunk she was.

Early in the interview, Edwards denied knowing T.D.'s age and said he thought she was no longer in high school. Later, Edwards acknowledged that B.T. "might have" told him that T.D. was 16 years old, though he thought B.T. was referring to someone else. Edwards then said that he knew T.D. was 16 years old when he was intimate with her. But he later changed his answer and reverted to saying that he thought B.T. had been referring to a different girl who was 16 years old.

### 3.     *Forensic Evidence*

A sexual assault forensic nurse examined T.D.'s genitalia and found petechia, erythema (redness), and tenderness on the two sides of the entry into the vaginal canal. A DNA analysis expert testified that samples from T.D.'s cervix swabs matched Edwards's DNA profile at 27 loci.

T.D.'s blood-alcohol content was .138 percent, and her blood also tested positive for cannabinoids (THC). An expert in the effects of alcohol and THC on the human body opined that alcohol affects brain processing and cognitive function first, then sensory

4

functions, and lastly motor functions.  At a blood-alcohol level of .138 percent, the expert would expect "the vast majority of cognitive impairment," some sensory impairment including vision, and motor function impairment with slurred speech.  THC would also impair coordination, motor function, and the ability to perform divided attention tasks.

## C.  *The Verdict and Sentencing*

The jury found Edwards guilty of both counts as charged.  In April 2023, the trial court sentenced Edwards to the middle term of nine years for forcible rape of a minor at least 14 years old (§ 261, subd. (a)(2); count 1) and imposed and stayed under section 654 the low term of three years for rape of an intoxicated person (§ 261, subd. (a)(3); count 2).

## II.  DISCUSSION

### A.  *Instructions on a Good-Faith Belief in Consent*

A "reasonable and bona fide belief" in consent to sexual intercourse negates the wrongful intent necessary for forcible rape.  (*People v. Mayberry* (1975) 15 Cal.3d 143, 155 (*Mayberry*); *People v. Williams* (1992) 4 Cal.4th 354, 360 (*Williams*).)  Edwards argues that the trial court erred by failing to instruct the jury sua sponte on the elements of a good faith belief in consent (the *Mayberry* defense) as to both rape of an intoxicated person and forcible rape.  Because the trial court properly instructed the jury that it could not convict Edwards of rape of an intoxicated person unless it found that Edwards knew or should have known that T.D. was too intoxicated to give legal consent, we find no instructional error occurred as to that charge.  Because the jury in convicting Edwards of that offense necessarily found that he knew or should have known that T.D. could not legally consent, the asserted error in the instructions on forcible rape was harmless.

#### 1.  *Legal Principles*

"A trial court's duty to instruct, sua sponte, on particular defenses arises ' "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the

5

defendant's theory of the case." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 424.) Substantial evidence in this context is "evidence sufficient to 'deserve consideration by the jury,' *not 'whenever any evidence is presented, no matter how weak.'* " (*Williams, supra*, 4 Cal.4th at p. 361, italics added.) But " ' "when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request." ' " (*People v. Anderson* (2011) 51 Cal.4th 989, 996–997 (*Anderson*).)

### 2. *Rape by Intoxicating Substance*

#### a. *No Sua Sponte Instruction Required*

Because liability for rape of an intoxicated person requires that the defendant knew or reasonably should have known that the victim was too intoxicated to give legal consent, the trial court was not required to give a sua sponte *Mayberry* instruction.

The trial court instructed the jury on the elements of the offense as follows: "1. The defendant had sexual intercourse with a woman;  [¶]  2.  He and the woman were not married to each other at the time of the intercourse;  [¶]  3.  The effect of an intoxicating substance prevented the woman from resisting;  [¶]  AND  [¶]  4.  The defendant knew or reasonably should have known that the effect of an intoxicating substance prevented the woman from resisting."  The court further instructed:  "A person is *prevented from resisting* if he or she is so intoxicated that he or she cannot give legal consent.  In order to give legal consent, a person must be able to exercise reasonable judgment.  In other words, the person must be able to understand and weigh the physical nature of the act, its moral character, and probable consequences.  Legal consent is

6

consent given freely and voluntarily by someone who knows the nature of the act involved."

The parties do not dispute the propriety of these instructions, which restate the elements of the offense per pattern instruction CALCRIM No. 1002. (See § 261, subd. (a)(3) [elements of rape of an intoxicated person].) But Edwards maintains the trial court erred by omitting the following optional language from the pattern instruction: "The defendant is not guilty of this crime if he actually and reasonably believed that the woman was capable of consenting to sexual intercourse, even if that belief was wrong. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the woman was capable of consenting. If the People have not met this burden, you must find the defendant not guilty." (CALCRIM No. 1002.)

The *Mayberry* defense is in part premised on the fact that persons who committed an act "under an ignorance or mistake of fact, which disproves any criminal intent" are not capable of committing a crime; in other words, a reasonable mistake of fact about a victim's consent negates the wrongful intent to use force to overcome the victim's will. (§ 26; *Mayberry*, *supra*, 15 Cal.3d at p. 155; *Williams*, *supra*, 4 Cal.4th at p. 361.) But unlike forcible rape, the wrongful intent required for rape of an intoxicated person is actual or constructive knowledge that the person—consenting or not—lacks the capacity to give consent. (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1245 (*Braslaw*); § 261, subd. (a)(3) [specifying that a victim "is prevented from resisting by an intoxicating or anesthetic substance, or a controlled substance, and this condition was known, or reasonably should have been known by the accused"]; *People v. Giardino* (2000) 82 Cal.App.4th 454, 466 [defining " 'prevented from resisting' " as lacking "the ability to exercise reasonable judgment, i.e., to understand and weigh not only the physical nature of the act, but also its moral character and probable consequences"].)

7

In *People v. Lujano* (2017) 15 Cal.App.5th 187 (*Lujano*), the Second District Court of Appeal considered an analogous argument in a case arising from a conviction of sodomy of an intoxicated person, a crime that largely mirrors the language of rape of an intoxicated person. (Compare § 286, subd. (i) with § 261, subd. (a)(3).)[5] The *Lujano* defendant had requested but was denied the following optional language from CALCRIM No. 1032: "The defendant is not guilty of this crime if he actually and reasonably believed that the other person was capable of consenting to the act, even if that belief was wrong. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person was capable of consenting." (*Lujano*, at p. 192.) *Lujano* found no error in the trial court's refusal to give this additional instruction: "a charge of sodomy (or rape) of an intoxicated person is premised not on the victim's lack of *actual* consent but rather on the victim's lack of *capacity* to give *legal* consent." (*Id.* at p. 194.) Unlike a charge of forcible rape, whether a defendant "actually and reasonably believed that the victim was capable of giving legal consent" (in essence, the *Mayberry* defense) is "a negation of an element of the offense" of the crime of sodomy by an intoxicating substance; thus, the clarifying instruction was a "pinpoint instruction that merely duplicates other parts of the instruction given, namely, the third element and the definition of 'prevented from resisting.' " (*Lujano*, at pp. 195, 192.)

---

[5] Section 286, subdivision (i) states: "Any person who commits an act of sodomy, where the victim is prevented from resisting by an intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused, shall be punished by imprisonment in the state prison for three, six, or eight years." Section 261, subdivision (a)(3) defines rape as an act of sexual intercourse when "a person is prevented from resisting by an intoxicating or anesthetic substance, or a controlled substance, and this condition was known, or reasonably should have been known by the accused."

We find *Lujano* persuasive. An instruction that Edwards was not guilty if he had a good faith belief that T.D. had the capacity to consent would merely reformulate an element the trial court had properly instructed the prosecution was required to prove—that Edwards knew or reasonably should have known that an intoxicating substance prevented T.D. from resisting and that she was therefore incapable of consenting. (See *Lujano*, *supra*, 15 Cal.App.5th at p. 195.)

Edwards argues that *Lujano* was wrongly decided in that rape of an intoxicated person is a general intent crime like forcible rape, so a mistaken belief in consent likewise negates the mens rea for the offense. (See *People v. Linwood* (2003) 105 Cal.App.4th 59, 70.) But this argument misses the point: The trial court properly instructed the jury that rape of an intoxicated person requires the prosecution to prove beyond a reasonable doubt that the defendant "knew or reasonably should have known" that T.D. was too intoxicated to "give legal consent"—to "exercise reasonable judgment," to "understand and weigh the physical nature of the act, its moral character, and probable consequences," and to consent "freely and voluntarily." No more was required, absent a defendant's request. (*Anderson*, *supra*, 51 Cal.4th at pp. 996–997 [defining pinpoint instructions].)[6]

Thus, the trial court did not err by failing to sua sponte instruct on a *Mayberry* defense with respect to the charge of rape of an intoxicated person.

---

[6] That the pattern instruction suggests an available pinpoint instruction does not change our analysis. The California Supreme Court reminds us that "jury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent. . . . At most, when they are accurate, . . . they restate the law." (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7; cf. *Lujano*, *supra*, 15 Cal.App.5th at pp. 192–193 [finding no error in trial court's denial of *Mayberry*-style pinpoint instruction suggested in CALCRIM No. 1032, which defense counsel timely requested].)

9

### b. *Ineffective Assistance*

Edwards in the alternative argues that the failure to request CALCRIM No. 1002's optional language pinpointing intent as the disputed element denied him the effective assistance of counsel. As is well established, however, Edwards must establish both that his counsel's performance was deficient and that he suffered prejudice to prevail on a claim of ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691–692 (*Strickland*).) We will assume without deciding that the failure to request a pattern instruction's option for pinpointing the crux of the defense case amounts to deficient performance. But to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

Because we presume that the jury understood and followed what we have concluded were the trial court's correct instructions on rape of an intoxicated person, Edwards is unable to demonstrate prejudice on this record. Given the trial court's correct definition of legal consent and correct statement of the prosecution's burden of proving not only the absence of capacity to give legal consent but also that the defendant knew or reasonably should have known of the incapacity, the jury in convicting Edwards necessarily found that Edwards knew or should have known that T.D. was incapable of resisting due to her intoxication. (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 202 ["presum[ing] that the jury understood and followed the trial court's instructions in reaching these decisions"].) Thus, counsel's failure to request a pinpoint instruction modeled after *Mayberry* is harmless under any standard.[7] (See *Lujano*, *supra*,

---

[7] The *Strickland* reasonable probability standard applies to this ineffective assistance of counsel claim even though Edwards in part argues that the omission implicated his federal constitutional rights by depriving him of the ability to present his defense. (See *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007–1010 [applying

15 Cal.App.5th at pp. 195–196 ["Omission of an instruction is harmless beyond a reasonable doubt if ' "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions" ' "]; *Braslaw*, *supra*, 233 Cal.App.4th at p. 1246 ["the fourth element of the crime of rape of an intoxicated person necessarily addressed the defense of a reasonable mistake of fact as to whether the victim was too intoxicated to consent"].)

### 3.     *Forcible Rape*

Edwards argues that the trial court erred by failing to sua sponte instruct on the *Mayberry* defense as to the charge of forcible rape, as well.  But " '[e]rror in failing to instruct on the mistake-of-fact defense is subject to the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836.' " (*People v. Molano* (2019) 7 Cal.5th 620, 670.)  Reversal is required only if it is reasonably probable that in the absence of the error the defendant would have received a more favorable outcome. (*Ibid.*)  Assuming the trial court erred in failing to give a *Mayberry* instruction as to forcible rape, the jury's finding that Edwards knew or reasonably should have known that T.D. lacked the capacity to consent again forecloses a finding that Edwards was prejudiced by the omission.

For forcible rape, the prosecutor was required to prove that the victim did not consent to the intercourse.  (CALCRIM No. 1000; see also § 261, subd. (a)(2).)  To consent, the victim "must act freely and voluntarily and know the nature of the act." (CALCRIM No. 1000; § 261.6, subd. (a).)  And the *Mayberry* defense is predicated on the defendant's reasonable *belief* in the victim's consent, not on the existence of consent; the defense requires both subjectively that "the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse" and that objectively, the "mistake regarding consent was reasonable under the circumstances." (*Williams*, *supra*, 4 Cal.4th at pp. 360–361.)  Although the *Mayberry* decision itself did

*Strickland* standard of prejudice to claim of ineffective assistance even though alleged errors concerned federal constitutional rights].)

11

not define "consent," the California Supreme Court in *Williams* relied on the general definition of "consent" as used in rape prosecutions set forth under section 261.6 when defining the *Mayberry* defense: that is, consent "means positive cooperation in act or attitude pursuant to an exercise of free will" and that "[t]he person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (§ 261.6, subd. (a); *Williams*, at p. 361, fn. 6.)

As discussed, an element of the offense of rape of an intoxicated person is that the defendant knew or reasonably should have known that the effect of an intoxicating substance prevented the victim from resisting. Prevented from resisting in this context essentially means that "the victim is not capable of giving legal consent because of intoxication from the substance or substances in question." (*Lujano*, *supra*, 15 Cal.App.5th at p. 193; see also CALCRIM No. 1002 ["[l]egal consent is consent given freely and voluntarily by someone who knows the nature of the act involved"].) Finding Edwards guilty of rape of an intoxicated person, the jury necessarily found that Edwards either knew or should have known that T.D. was too intoxicated to be capable of giving legal consent. Under either scenario, the jury found lacking one of the two required elements of a *Mayberry* defense. In the jury's view, Edwards either lacked the subjective belief that T.D. consented freely and voluntarily, knowing the nature of the act involved, or else the jury concluded his mistaken belief in consent was not "formed under circumstances society will tolerate as reasonable." (*Williams*, *supra*, 4 Cal.4th at p. 361.)

Accordingly, the jury's guilty verdict for rape of an intoxicated person vitiates any possibility that the same jury would have found that Edwards had a reasonable, good-faith belief in T.D.'s capacity to freely and voluntarily consent. (See *Mayberry*, *supra*, 15 Cal.3d at p. 155; see also *Lujano*, *supra*, 15 Cal.App.5th at p. 196; *Braslaw*, *supra*, 233 Cal.App.4th at p. 1246; *In re Lopez* (2023) 14 Cal.5th 562, 568.) Accordingly, any error in failing to give a *Mayberry* instruction as to the forcible rape charge was harmless under any standard.

**B.      Kurtzman *Error***

Next, Edwards argues his trial counsel was also ineffective by failing to object to the prosecutor's closing argument, which he characterizes as suggesting the jury could not consider the lesser offenses before reaching a verdict on the greater offenses. Because the prosecutor's argument was not objectionable, we find no error.

**1.      *Additional Background***

Along with the charged offenses, the jury was instructed on assault with the intent to commit rape and attempted rape, as lesser included offenses of forcible rape, and on attempted rape of an intoxicated woman, as a lesser included offense of rape of an intoxicated person.  The jury was also instructed with CALCRIM No. 3517 as follows: "It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime."

During closing argument, after discussing the evidence in support of the charged offenses, the prosecutor said, "So let's take a moment and talk about the verdict forms that you're going to get."  He then argued:  "If you find the defendant not guilty [of the charged offenses], then there are other crimes to consider."  Identifying assault with intent to commit rape and attempted rape as the lesser included offenses for count 1, the prosecutor then said, "But if you find that he's not guilty [of forcible rape], then you move on to the lesser[s].  . . .  You're to consider them in whatever order you want, but you can only get to those [lesser offense verdict] forms if you found him not guilty on the first offense.  [¶]  If you find him guilty, your job is done.  Sign that form.  If you find him not guilty, then you must consider the next step.  If you can't decide, then you don't sign anything.  You just let the judge know."  And after discussing the lesser offense of attempted rape for counts 1 and 2, the prosecutor again stated that "if you find him not guilty, then you can move on to the lesser of attempted rape of an intoxicated person."

13

## 2.      *Legal Principles*

Edwards characterizes the prosecutor's argument as misconstruing the law under *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*) and argues that his trial counsel rendered ineffective assistance by failing to object to the asserted misconduct.[8]  In *Kurtzman*, the California Supreme Court held that "restrict[ing] a jury from *returning a verdict* on a lesser included offense before acquitting on a greater offense" is proper but that it "does not preclude a jury from *considering* lesser offenses during its deliberations." (*Kurtzman*, at pp. 324–325.)  *Kurtzman* thus held that it was error for the trial court to instruct the jury not to deliberate on or consider a lesser included offense until it had unanimously agreed on the greater offense.  (*Id.* at p. 335.)

As stated *ante*, to prevail on a claim of ineffective assistance of counsel, Edwards must establish both that his counsel's performance was deficient and that he suffered prejudice.  (*Strickland*, *supra*, 466 U.S. at pp. 687, 691–692.)  And in determining whether a prosecutor's remarks to a jury amount to error, " 'we examine whether there is a reasonable likelihood that the jury would have understood the remark to cause the mischief complained of.' " (*People v. Ayala* (2000) 24 Cal.4th 243, 288 (*Ayala*).)

## 3.      *Analysis*

Although it is improper for the prosecutor to misstate the law (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*)), the prosecutor here never suggested that the jurors were *precluded* from considering the lesser offenses before reaching a verdict on the greater offenses.  To the contrary, the prosecutor reminded the jury that it was entitled "to consider [the greater and lesser offenses] in whatever order you want."  In context, we see no " 'reasonable likelihood that the jury would have understood the remark to cause

---

[8] " ' "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' " (*People v. Thomas* (2011) 51 Cal.4th 449, 491.)

14

the mischief complained of.' " (*Ayala*, *supra*, 24 Cal.4th at p. 288.)  The prosecutor's argument—that the jury could "move on" to the lesser offenses—can be reasonably interpreted as advising the jury on the order in which it would reach "those [lesser offense verdict] forms" rather than on the order of its deliberations.  To the extent the prosecutor was advising the jury that it need not "get to those forms") unless it acquitted the defendant of the greater offenses, this statement is not at odds with *Kurtzman.*  (See *Kurtzman*, *supra*, 46 Cal.3d at pp. 324–325.)

The jury was also instructed that it must follow the law as instructed by the court, and if there were conflicts between the attorneys' arguments and the court's instructions, the jury needed to follow the instructions.  Because the jury here was correctly instructed with CALCRIM No. 3517, we must "presume that the jury understood and followed the trial court's instructions" during its deliberations and decided for itself the order in which to consider the lesser and greater offenses.  (*Gonzalez*, *supra*, 5 Cal.5th 186, 202; *People v. Ramirez* (2023) 98 Cal.App.5th 175, 223 [no prejudice from prosecutor's misstatement under *Kurtzman* because the jury was correctly instructed on the law].)

In *People v. Olivas* (2016) 248 Cal.App.4th 758, the jury sent the trial court a note during deliberations asking if it could "consider" an alternate count if hung on one of the counts and the court answered no.  (*Id.* at p. 772.)  In part, we held that the earlier instruction with CALCRIM No. 3518, which contains language mirroring that of CALCRIM No. 3517, "cannot by itself undo the harm caused by the court's subsequent incorrect response to the jury question during deliberations."  (*Olivas*, at p. 777.)  But *Olivas* is distinguishable.  There, the *Kurtzman* error was made by the trial court in response to a jury question, while here, the error was made by the prosecutor during argument.  The arguments of counsel are not binding on jurors, nor do they carry as much weight as an instruction by the court.  (*Centeno*, *supra*, 60 Cal.4th at p. 676.)  And unlike *Olivas*, where the juror's questions indicated confusion over the acquittal-first rule and whether the jury was permitted to consider alternate offenses, no such confusion is

apparent in this record.  The jury here did not ask for clarification about the deliberation process and gave no indication that it was divided on any of the greater offenses.  (See *Olivas*, *supra*, 248 Cal.App.4th at p. 772.)

**C.      *Cumulative Error***

Edwards argues that the cumulative effect of the alleged errors requires reversal of his convictions.  (See *In re Reno* (2012) 55 Cal.4th 428, 483.)  Here, we have assumed (1) error in the trial court's omission of a *Mayberry* instruction as to the forcible rape charge and (2) deficient performance in trial counsel's failure to request a pinpoint instruction on the capacity to consent.  Because the jury's finding that Edwards knew or reasonably should have known that T.D. lacked the capacity to consent, these assumed errors are independently harmless for the identical noncumulative and conclusive reason. We find that the cumulative prejudicial impact of these alleged errors does not warrant reversal of Edwards's convictions.

## III.   DISPOSITION

The judgment is affirmed.

_____
LIE, Acting P. J.

WE CONCUR:


_____
WILSON, J.


_____
BROMBERG, J.


*People v. Edwards*
H050943